Lawrence vs. Kenney.

LAWRENCE VS. KENNEY.

EJECTMENT — TAX DEED. (1) *Constructive possession of land deeded for taxes.* (2) *Burden of proof as to adverse actual possession.* (3) *Bar of the statute — must be pleaded.* (4) *Estoppel in pais.*

1. This court adheres to the decisions in *Gunnison v. Hoehne* (18 Wis., 268), and subsequent cases, that under ch. 22, Laws of 1859, the grantee in a tax deed has the *constructive possession* of the land if actually unoccupied; and in such case, after the expiration of the time limited for an action by the former owner to test the validity of the tax deed (fixed at three years by sec. 5, ch. 138, Laws of 1861),

the title and right of possession under the tax deed having become absolute, the grantee therein may maintain ejectment against any person thereafter taking possession adversely to such deed, and the bar of the statute does not apply to him.

2. Where plaintiff in ejectment claims under a tax deed, if defendant relies upon an adverse possession within three years next after the recording of the deed, he has the burden of proving such possession.

3. No question as to plaintiff's right to bring the action being barred under any statute of limitation applicable to tax deeds, is raised, unless such statute is pleaded by the defendant.

4. Where F. L., the grantee in the tax deed, before conveying to C. L., stated to A. that he (said F. L.) did not claim any title to the land, but that it belonged to C. L., and A. thereupon bought of the original owner, such statement does not estop C. L. from claiming title under the tax deed as against A. or one holding under him.

APPEAL from the Circuit Court for *Manitowoc* County.

Ejectment. The defendant appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

*Gillett & Taylor*, for appellant :

The plaintiff was barred from bringing this action by sec. 32, ch. 22, Laws of 1859. We hold that this section applies to the tax deed given in evidence here, although it was issued on a tax roll made previous to 1859. Secs. 49 and 50 of the act of 1859 virtually repeal sec. 153, ch. 18, R. S., so far as the manner of executing a tax deed on a sale theretofore made is concerned; and sec. 32 of the act of 1859 declares that the provisions of that section shall apply to deeds executed as provided in that act. It may be urged that as there is no evidence showing that the grantor of the defendant was in the actual possession of this land at any time during the four years next after the issuing of the tax deed, he would be barred (under sec. 5, ch. 138, Laws of 1861) from recovering the land in an action of ejectment against the tax deed claimant, if he had after that time taken possession; and that as the plaintiff is barred of his action, he cannot now set up his possession as a defense to this action of the tax deed claimant. This does

not follow either in a logical or legal sense. The law has said to the former owner of land sold for taxes, "If you wish to contest the validity of the title of a claimant under a tax deed, by a suit at law, you must do so in three years after the recording of such deed;" but it nowhere prohibits the original claimant from peaceably taking possession of his land if he can, even after the expiration of three years after the recording of such deed. In this case the defendant, finding his land unoccupied, takes quiet possession thereof, and holds such possession for over four years. He did not require the aid of the courts to give him possession of his lands. Now the tax title claimant requires the aid of the courts to enforce his claim, and sec. 32, ch. 22, above cited, says, "You shall not have that aid except on certain conditions, which you have failed to establish." How does the fact (if it be a fact) that this defendant by his delay had lost his right to recover in a suit at law, help the plaintiff to a legal remedy which the law says he shall not have?

We think, however, under the evidence in this case, the defendant was not barred from bringing his action, had it been necessary for him to bring one. It would seem pretty clear that the provisions of secs. 32 and 33, ch. 22, Laws of 1859, were intended to, and do change the rule adopted by the earlier decisions of this court, holding that as to unoccupied lands the statute of limitations runs in favor of the tax title claimant; and we do not see how the repeal of sec. 33, and the adoption of sec. 5, ch. 138, Laws of 1861, can be held to restore the old rule adopted by this court. It would seem to be a more logical exposition of the law to hold that under sec. 32, ch. 22, Laws of 1859, and sec. 5, ch. 138, Laws of 1861, the original owner is barred only in cases when the tax title claimant has such a possession or does such acts as will perfect his title against all claimants if continued for the time specified in sec. 32. Such a construction will give force to the whole of sec. 32; whereas the other construction, "that in case of vacant

lands " the three years limitation runs against the original own-er, nulifies all the provisions of sec. 32, except the first clause, and gives him a good title, and a right to bring an action at any time before the action of ejectment is barred by the general statute of limitations, without doing any of the things required by the subsequent clause of that section.

The decision in the case of *Gunnison v. Hœhne*, 18 Wis., 268, would seem hostile to such construction of the law. In that case this point was not argued by counsel, and that decision ought not to be held to bind the court, if, upon *a careful* con-sideration, it be found unsupported by a fair construction of the statute.

It seems to us that if the court holds that the title of a per-son claiming under a tax deed becomes absolute after the lapse of three years from the date of the recording of his deed, in all cases of unoccupied lands, it virtually nullifies all the material provisions of sec. 32, ch. 22, Laws of 1859. This sec-tion very clearly provides that no action shall be brought by the grantee or his assignee in a tax deed unless brought with-in three years after the date of the recording of his deed, unless such grantee shall have paid the taxes assessed on such land for five years next after the date of such deed, or unless he shall have been in the actual and continued possession of such lands, claiming title under such deed, for *three years* previous to the expiration of the *five years* next after.

If the legislature had intended that the tax claimant should have a perfect title after the expiration of three years from the date of the record of his deed, when the premises were simply unoccupied, they would not have used the language above quoted.

This section was certainly intended rather to bar all claim under a tax deed unless such claim was asserted within three years, either by action or by taking possession of the claimed premises, or by paying the future taxes assessed thereon; and it does not come within the province of this court to nullify

these plain provisions by engrafting thereon other and more liberal ones for the tax claimant.

It can hardly admit of a doubt that no such rule as was established by this court in the early decisions in favor of tax title claimants, could or would have been established if secs. 32 and 33, ch. 22, Laws of 1859, had been in force and applicable to the case in which such rule was laid down; and it follows that the enactment of these sections was intended to be, and was, a complete abrogation of that rule; and a case which within the provisions of these sections must be governed by them, and not by the rule which they abrogate. — Counsel also argued, among other things, that the plaintiff was *estopped* from claiming under the tax deed, by the statements and admissions of his grantor, made before the purchase by defendant's grantor.

*R. P. Eaton*, for respondent, to the question of estoppel, cited 20 Wis., 425. 2. He contended that the judgment should be affirmed because the statute of limitations was not pleaded or otherwise set up in the circuit court. R. S., ch. 138, sec. 1. 3. He argued that the action was not barred by sec. 32, ch. 22, Laws of 1859, because, (1.) The limitation mentioned in that section if it does not apply exclusively to the peculiar form of action, equitable in its nature, which is provided by that statute, must at least be restricted to deeds based upon sales thereafter made. Statutes are not to be construed so as to act upon existing rights unless the intention of the legislature is unmistakeable; and such intention is not to be inferred from the use of general language. 15 Wis., 489; 11 id., 422. And one of the constructions above mentioned must be put upon the section in order to give full effect to all its words, and make all the statutes on the subject harmonize. 5 Wis., 481; 13 id., 57, 373; 10 Wend., 363; 12 id., 496; 24 N. Y., 20. (2.) By the sale in 1858 the purchaser acquired a right to a deed which should convey to him an unimpeachable title unless the land was redeemed (Laws of 1862, ch. 503); and of that right no legislative act

can deprive him.   11 Wis., 441; 13 id., 341; 21 id., 350; 23 id., 367.   4. Plaintiff's deed, being conclusive evidence of title in fee simple when it was made, must have given the grantee constructive possession, upon the rule of the common law that the title carries with it the right of possession, and of course the constructive possession unless there was some other person actually holding adversely.   3 Washb. R. P., 173 ; 13 Wis., 252. No intrusion having occurred until after the three years expired within which the former owner was allowed to attack the tax deed, he cannot now be told that he is too late because he did not bring his action two years before any cause therefor occurred.   11 Wis., 441.   If such was the intent of the legislature, they had no power to make such a limitation, because it gave the plaintiff no time in which he could assert his right by action.   The rule hitherto established by this court (11 Wis., 441 ; 18 id., 368, etc.), is, that the entire right and title to the land is taken from the old owner, and vested in the holder of a valid tax deed; and that it is wholly immaterial whether that effect is produced by a deed under a strict performance of the requisitions of the law, or by a deed made conclusive evidence of title by the statute, or by the three years' statute of limitations; and that in either case the old owner becomes a perfect stranger to the title, and, if he intrudes upon the land, is liable to be driven out by ejectment like any other stranger.

At the January term, 1872, the decision of the circuit court was reversed.   A rehearing was afterwards granted, and the following opinion was filed at the January term, 1873.

DIXON, C. J.   Ejectment, for a tract of land containing eighty acres, situated in the county of Manitowoc.

The action was commenced November 23, 1869, and the complaint alleged seizin in fee and right of possession in the plaintiff, and that defendant was in possession, and wrongfully

and unlawfully withheld the same from the plaintiff. The answer admitted that the defendant was in possession of the land, but denied every other allegation of the complaint.

On the trial, the plaintiff gave in evidence a tax deed of the land, in due form, executed by the proper officer to Frederick Lawrence, the father of the plaintiff, and recorded on the 16th day of September, 1861, on a sale of the land made September 14, 1858, for the delinquent taxes of the preceding year. The plaintiff also gave in evidence a quitclaim deed from Frederick Lawrence to himself, dated September 19, and recorded October 18, 1868. He likewise proved that when the deed was executed the land was wild and uncultivated, and that during the winter following Frederick Lawrence entered and cut off the timber from about six acres of it. There was no evidence of any possession or acts of ownership under the tax deed after that winter; indeed it was affirmatively shown that such possession and acts of ownership ceased with the cutting of the timber. Upon this evidence the plaintiff rested his case, and it did not at that time appear when the defendant took possession.

The defendant moved the court to nonsuit the plaintiff, which motion was denied. The defendant then offered testimony tending to prove certain irregularities in levying the taxes of 1857, and in the sale of the land for the nonpayment in 1858; also that one Treat was the owner of the land under a conveyance dated August 31, 1865, executed to him by one Pepper, who was the patentee from the United States; and also certain statements and admissions of Frederick Lawrence to Treat, made before the latter took conveyance from Pepper, and on the faith of which he purchased, which, it was claimed, estopped the plaintiff from asserting title under the tax deed. The court rejected all the evidence so offered by the defendant, and, having also rejected further evidence offered by the plaintiff to show that the tax deed in question was in reality taken out by Frederick Lawrence for the benefit of his son,

the plaintiff, and with the plaintiff's money, directed a general verdict for the plaintiff.

It must be taken as a fact not in dispute, that the premises remained vacant and unoccupied from the time Frederick Lawrence ceased cutting timber, in the winter of 1861–2, until after the execution of the deed to Treat in August, 1865, and that no possession was taken by the defendant, or any one else claiming title adverse to the plaintiff, until after the expiration of more than three years next after the date of the recording of the tax deed. This inference is very clear from the nature of the proofs offered and course pursued by the defense on the trial; and, besides, if the defendant relied upon a possession actually taken and held by him, or those under whom he claimed, within the three years next after the recording of the tax deed, the burden of establishing that fact rested upon him. He made no such proof, and offered none.

The question arising upon the claim of estoppel, made by the defendant, may properly first be considered. Treat, the purchaser and grantee of Pepper, was called to the stand and sworn as a witness, and the facts offered to be shown by his testimony were as follows: "That when Frederick Lawrence stated to said Treat that he, Lawrence, had no title to the land in suit, and that he did not claim to have possession of said land, said Treat then told said Lawrence that he should buy the land; that said Lawrence then stated that he did not care what said Treat did about the land, that he had nothing to do with it; *that it was his son's land, who was then in Green Bay or Oconto;* that said Treat immediately after bought the land of said Pepper; that he bought it relying upon the representation so made to him by said Lawrence, who then held in his own name the tax deed in evidence in this suit." It is obvious that here was no offer of evidence sufficient to establish an estoppel, and that in truth it showed there was none. When Frederick Lawrence informed Treat that the land was his son's, it was thenceforth impossible for Frederick Lawrence, by any state-

Lawrence vs. Kenney.

ments or admissions he might make to Treat respecting the land, to bind or conclude his son so that Treat could take advantage of it as an estoppel. This proposition is self-evident, and enough upon the question thus presented.

The other question presented, and that mainly discussed in the oral and printed argument, is, whether the plaintiff was barred from bringing his action by the provisions of sec. 32, ch. 22, Laws of 1859, found also as § 172, 1 Tay. Stats., p. 440. That was the statute governing when the tax deed was issued; and the same is still in force. It reads as follows:

"No action shall be maintained by the grantee named in any deed of conveyance, executed by the clerk of any county board of supervisors on the sale of lands for nonpayment of taxes as provided in this act, or any other person claiming under such grantee, to recover the possession of the land described therein, or any part thereof, or any interest therein, unless such action shall be brought within three years next after the date of the recording of such deed, or unless such grantee, or those claiming under him, shall have paid the taxes assessed on such land for five years next after the date of such deed, or unless such grantee, or those claiming under him, shall have been in the actual and continual possession of said lands, claiming title under such deed, for three years previous to the expiration of five years next after the date of such deed; in the two cases last mentioned such action may be brought within the time limited by law for the bringing of actions for the recovery of real estate after the date of such deed."

In the former opinion in this case, (a rehearing having been ordered by this court on its own motion), we held that the action of the plaintiff was barred, and that the effect of the section above quoted, when construed in connection with the provisions of section 33 of the same act (afterwards repealed by section 5 of the act approved March 28, 1861, ch. 138, Laws of 1861, 1 Tay. Stats., 441, sec. 173), was to change the rule theretofore established by and under previous statutes, respecting the

constructive possession of unoccupied lands sold and conveyed for the nonpayment of taxes; and that the change wrought was, that instead of constructive possession following the tax deed and being transferred to the grantee under it and those claiming under him, such possession remained with the former owner of the land and party in default in not paying the taxes assessed upon it, and for whose delinquency the public authorities were compelled to sell and convey it in order to obtain payment.

The rehearing was ordered, not upon the ground that the court was satisfied of any error committed in the construction thus given to the act, but upon the maxim of *stare decisis*, the application of which, it was seriously believed, had been overlooked in the decision of the case. This point will be hereafter considered. Further examination has, however, convinced me that the construction formerly given to the act was in this respect erroneous, and that, omitting altogether from our consideration the maxim *stare decisis* and its application, the true construction of this statute, as well as that of those which preceded it, requires that the constructive possession of unoccupied lands should be held to follow the tax deed, and vest in the grantee and those claiming under him, wherever the deed is valid on its face.

An examination of the former opinion will show that the conclusion that such possession did not follow the deed was based entirely upon the provision that no action shall be maintained by the grantee after the lapse of three years from the date of the recording of his deed, except in the two cases specified, where he has paid the taxes for five years next after the date of the deed, or been in the actual and continued possession for three years previous to the expiration of five years next after such date, in which case he shall have the same time after that date for bringing his action as that limited by law for the bringing of other actions for the recovery of real estate. If there were no exceptions in this statute extending the time

within which the grantee may maintain his action in the two cases specified, then the statute would be in substance and effect precisely like the former ones which have been so often construed by this court, and under which it has been invariably held that constructive possession followed the deed and was vested in the grantee.

The repealed section 33, also relied upon as aiding in the construction formerly given, prescribed a limitation of four years next after the recording of the tax deed in the office of the register of deeds of the proper county, within which "the former owner" should bring his action to recover the possession or to avoid the deed, against the grantee or those claiming under him, "when such grantee or those claiming under him shall have entered into actual possession of the lands so conveyed, claiming title under such deed, within one year after the date of such deed, and shall have continued in the actual possession thereof, for the term of three years, and paid all taxes assessed thereon after the date of such deed." In every other case than that so specified, the former owner or owners, or any person claiming under him or them, had the usual time limited by law in which to bring suit to recover possession of the land or for the purpose of setting aside the conveyance.

The substituted section of the law of 1861, enacted some months before the deed here in question was executed, and which is still in force, fixes a period of three years within which the former owner must bring his action, and is subject to no exceptions whatever. It reads as follows:

" No action shall be commenced by the former owner or owners of any lands, or by any person claiming under him or them, to recover possession of land which has been sold and conveyed by deed for nonpayment of taxes, or to avoid such deed, unless such action shall be commenced within three years next after the recording of such deed."

This provision, though differing slightly in terms, returns

squarely to the policy of the old law as understood and expounded before the act of 1859 was passed.

But, supposing the latter act had not been passed, and we were expounding section 32 as it stood in connection with section 33, both being in force: how do the provisions of either show that the legislature intended to change the former rule of law that constructive possession of unoccupied lands followed a tax deed valid on its face? It is argued, and was said in the former opinion, that because the legislature, by section 32, has specified two cases or classes of cases, which shall be excepted from its operation, and in which the grantee by tax deed may bring his action *after* the period therein limited for suing generally on such titles, therefore, the court cannot create a third exception to such general limitation, and hold that he may sue after it has expired in a case where the lands remained unoccupied during the three years next after the recording of the tax deed, and while the period of limitation was passing away; *and therefore also,* the legislature intended that constructive possession should not follow the deed.

So far as this reasoning goes, if it be correct, it overturns entirely all the former decisions of this court touching the subject, and shows that they were erroneously made. The construction of the former statute is well understood. It was that either party claiming title, the grantee by tax deed or the former owner, under necessity of suing, must bring his action within three years from the time of recording the tax deed. The construction of that statute and its effect upon the grantee was precisely as if it had been enacted in a separate section, and had read word for word like section 32 down to the words " or unless," where they first occur, or, as if the exceptions in section 32 had never been enacted or were stricken out. The bar of the former statute was construed as absolutely cutting off every action by the grantee or the former owner after the lapse of three years from the recording of the tax deed.

Now if a statute limiting the remedy of the grantee by tax deed in every case to a period of three years next after the date of recording, was held not to indicate an intention on the part of the legislature to deprive him of constructive possession of the land, how is it that a statute which so limits his remedy, not in all cases, but only in a portion of them, and expressly excepts others, and *favors* him with longer time in which to prosecute, can be held to indicate the opposite legislative intent, and that the design was to take away his constructive possession and withhold from him the advantages to be derived from it? I must say I cannot see how this reasoning and our former decisions can be made to stand together. I think it is founded on a false conception of the statute, and of the true grounds upon which it was formerly held, and still should be held, that a recorded tax deed draws after it constructive possession of vacant lands. Those grounds were, as will be seen from the early cases of *Sprecher v. Wakeley*, 11 Wis., 432; *Hill v. Kricke*, id., 442, and *Knox v. Cleveland*, 13 Wis., 245, that the recording of the tax deed was an assertion of title by the grantee upon which the former owner might maintain ejectment, and also that, by the statute declaring the effect of the deed, all legal presumptions were in favor of its regularity and validity, and of the genuineness of the grantee's title. The latter was given as one of the foremost and controlling grounds of decision in *Knox v. Cleveland*, page 251, and the same ground still exists by the provisions of section 25 of the act (1 Tay. Stats., 435, § 161), which declares that the deed "*shall vest in the grantee an absolute estate in fee simple*, subject however to all unpaid taxes and charges which are a lien thereon, and such deed, duly witnessed and acknowledged, shall be *prima facie* evidence of the regularity of all the proceedings from the valuation of the land of the assessor, inclusive, up to the execution of the deed, and may be recorded with like effect as other conveyances of land."

It certainly requires explanation to enable me to see how a

deed declared by law to vest an absolute estate in fee simple in
the grantee, and presumed in law to be in all respects valid and
regular, shall be held not to draw after it constructive posses-
sion of unoccupied and wild lands. It requires explanation
for me to comprehend the distinction in this particular between
the present statute and the former ones, or how *enlarging* the
remedies of the grantee shall be held to indicate an intent to
restrict his rights or to narrow or cut off the *prima facie* effect
expressly given to his tax deed. As already observed, I think
the error consists in supposing that the limitations fixed by the
statute for the bringing of actions have something to do with
this question, when in truth, as it seems to me, they have no
influence whatever upon it, as this court, in the cases referred
to and numerous subsequent ones, has again and again held
under previous statutes.

Under previous laws, the statute having declared the effect
of the tax deed, and it following that constructive possession
went with it whenever there was no actual possession of the
land, the statute of limitation was only looked to for the pur-
pose of ascertaining when the door was closed to any investiga-
tion of irregularities and defects, if such existed, by which the
deed might have been avoided, and so to ascertain when the
deed ripened into conclusive evidence of title and the right of
the grantee became forever fixed and unimpeachable as between
him and the former owner. After the time had elapsed
for the former owner to bring his action and inquire into
and show irregularities and defects, if such there were, and no
action had been brought, the title of the grantee became to all
intents and purposes absolute and indefeasible, and he could
sue on that title and maintain actions for its protection, and for
the preservation of his estate, the same as any other owner of
real property.

And how the provisions of section 33 affected this question,
I really cannot understand. It also, in all cases save one, en-
larged the time for the former owner to bring his action to the

period of limitation prescribed by the general laws of the state. If for the period of twenty years no action had been brought by him against the grantee to recover the lands, and during all that time the grantee had remained constructively possessed, I suppose his title could not afterwards have been impeached. Substituting the period of twenty years for that of three previously prescribed and now prescribed, and the effect was precisely the same. There could not, as it seems to me, have arisen any distinction in principle or as to the proper construction of the statute. Now, and ever since the passage of the act of 1861, the former owner being limited to the period of three years within which to commence his action, the title of the grantee to unoccupied lands becomes absolute after the expiration of that time, if no action is commenced.

And the inference from the two exceptional cases in section 32 seem to me unwarranted. The extended time given to the grantee in those cases must be understood as applicable to situations and circumstances where the grantee is *under the necessity of bringing suit* in order to obtain possession of the land, and not to those where he is under no such necessity. They must be understood as signifying and extending the remedy of the grantee, or his time to sue, first, in a case where the former owner has remained in the actual possession and yet the grantee has paid the taxes for five years next after the date of his deed, and, second, in a case where the former owner may have retained actual possession for two years, or for some period of time less than two years, next after the date or recording of the deed, and still the grantee have had such possession for three years previous to the expiration of five years after such date, and it thereafter becomes necessary to eject the former owner who has re-entered. In these excepted cases the grantee may bring his action within twenty years, the time limited by general law ; but in all other cases he must sue within three years, if any action on his part is required to assert title or recover possession of the lands under his deed.

Lawrence vs. Kenney.

·  And it is, I think, also an error to suppose, in a case where it is unnecessary for the grantee to sue within the three years, as where the lands are unoccupied, that no action can ever afterwards be maintained by him against the former owner, who subsequently intrudes or takes unlawful possession. Such is not the intention and never was the construction of the three years' limitation act. After the lapse of three years, and after the title of the holder had become perfect and indefeasible, he may then sue the same as any other owner, and the statute operates as no obstruction to him. He then sues upon his title, absolutely acquired, and if the former owner intrudes or dispossesses him, it is no more than if the same acts were done by a person who had always been a stranger to the title, and his action against him is the same as against any other disseizor or trespasser.

And if this latter view be not correct, then since the passage of the act of 1861 this strange result must follow, that it becomes a race of diligence between the grantee and the former owner of unoccupied land, after the expiration of the three years, to see who shall obtain actual possession of the land first ; for, whichever party is in, the other can have no action against him or to recover possession of the land. The former owner is limited to bringing his action against the grantee, or those claiming under him, within the three years, and the grantee is in like manner limited in his remedy against the former owner. Unless the construction heretofore given, and for which I contend, is correct, it is reduced to a question of mere physical effort and strength in such a case, between the parties, as to which shall get in first and maintain possession after he is in; for if once he is dispossessed and the other comes in, the same consequence ensues. It is idle to argue that the legislature never intended such result, for we all know that it did not.

·  I conclude, therefore, that the construction which the act of 1859 has tacitly and practically received ever since its enact

ment, namely, that constructive possession follows the tax deed of unoccupied lands issued under it, is the true construction. I think this follows from all the decisions and reasoning of this court upon the subject. It is the construction which the statute judicially, though silently, received in *Gunnison v. Hœhne*, 18 Wis., 268, and which it has in like manner received in a great number of cases, which have since come up to and been decided in this court. It is the construction in which every member of the profession has acquiesced without doubt or question, until the present case was presented, now more than thirteen years after the passage of the act. The opinion of the profession thus practically expressed for such a length of time, and assented to by the courts, is of very great weight, and cannot have been very far wrong.

But, as I have above remarked, the question I have been considering is not that upon which the court ordered the re-argument; and the views I have expressed must be regarded as my own, and not as written in pursuance of a decision, or by the direction of the court.

The question upon which the re-argument was ordered was, whether the case was one which should be governed by the maxim *stare decisis*, growing out of the decision in *Gunnison v. Hœhne, supra*, and others since made. The court is unanimously of the opinion that it is, and that to change the rule now would be productive of the greatest mischief in unsettling rights and divesting titles, which, in a great variety and number of cases throughout the state, have been acquired on the faith of it. We all know the multitude of transactions in lands, especially in the newer counties, may mistake the titles of which have been and are so held, and the mischiefs which must ensue if the rule already established be not adhered to. It may not be so strong a case for the application of the maxim as that presented in *Kneeland v. Milwaukee*, 15 Wis., 454, 691, where the principle was held to override a provision in the constitution in matters of taxation; but it is certainly strong enough to forbid

any new construction, even though that already given were fully conceded to have been erroneous.

The foregoing opinion was nearly completed before it was discovered by me that this court might have been saved all its labor and trouble, as well when the case was formerly heard and decided as at the present time, by giving a little closer attention to the pleadings. *The statute of limitations was not pleaded at all by the defendant, so that no question under it was or is presented by the case.* The point was not noticed by counsel, and so was overlooked by ourselves. That the defendant in a case like this must answer that he will insist upon the statute, or otherwise it will be of no avail, was decided in *Orton v. Noonan,* 25 Wis., 672.

*By the Court.*— Judgment affirmed.