WARREN and others, Respondents, vs. PUTNAM and another, Appellants.

WARREN and others, Appellants, vs. PUTNAM and another, Respondents.

*May 5 — June 1, 1885.*

TAX TITLES: RECORDING ACTS. *(1) Unoccupied lands: Constructive adverse possession: Surrender to original owner: Subsequent conveyance to* bona fide *purchaser: Statute of limitations.*

LOGS AND TIMBER. *(2) Damages for cutting: Equity.*

1. Within three years after the recording of a tax deed the grantee therein quitclaimed to the original owner, but the quitclaim deed was not recorded. Subsequently he conveyed the land to a third person who had no notice of the quitclaim deed and who duly recorded his conveyance. The lands remained unoccupied for more than three years after the tax deed was recorded. *Held,* that the quitclaim deed to the original owner was an abandonment and surrender by the tax-title claimant of the constructive adverse possession which arose in his favor upon the recording of his tax deed, and that the statute of limitations ceased thereupon to run in his favor, but ran thereafter in favor of the original owner, and at the expiration of the three years from the recording of the tax deed barred all right of action in favor of those claiming title thereunder. [ORTON and LYON, JJ., dissent, being of the opinion that the *bona fide* purchaser from the grantee in the tax deed, having duly recorded his conveyance, was entitled to protection under the recording acts, as against the unrecorded quitclaim deed to the original owner.]

2. In an equitable action by the original owner of land to set aside a tax deed and to recover damages for the cutting and removal of timber, if the defendants acted in good faith claiming title to the land, the plaintiff is not entitled to damages under sec. 4269, R. S., but may recover only the value of the timber cut and removed, with interest from the commencement of the action.

APPEAL from the Circuit Court for *Monroe* County.

The facts will sufficiently appear from the opinions.

For the plaintiffs there was a brief by *M. P. Wing & Guy Prentiss,* attorneys, and *I. C. Sloan,* of counsel, and oral argument by *Mr. Sloan.*

For the defendants there was a brief by *Morrow & Masters* and *Bleekman & Bloomingdale*, attorneys, and a supplemental brief by *S. U. Pinney*, of counsel, and the cause was argued orally by *Mr. Bleekman* and *Mr. Pinney*.

TAYLOR, J.  The action in these appeals was brought by the *Warrens* and *Barber*, as plaintiffs, against *Putnam* and *Newton*, to set aside a tax deed to forty acres of land, which the plaintiffs claimed to own as purchasers from the government, and under which tax deed the defendants claimed to own said lands and were proceeding to cut the timber therefrom.  The plaintiffs asked an injunction against the defendants to restrain them from committing waste on the lands during the pendency of the action, and that they be perpetually enjoined from setting up any title to said lands under said tax deed, and for a judgment "that the defendants be adjudged to pay to the plaintiffs full damage for the timber cut and removed from said land, and for damages to the freehold by reason of the cutting and destruction of said timber."

It appears from the record that a temporary injunction was issued pending the litigation, and it also appears that previous to the commencement of this action the defendants had cut and removed a large quantity of the timber growing on the land and converted it to their own use.  The action was tried by the court, and the plaintiffs prevailed as to their title, the court holding that the defendants acquired no title to the lands by virtue of the tax deed under which they claimed; and also adjudged that the plaintiffs were entitled to a judgment against the defendants for the value of 291,000 feet of pine logs, cut and removed from said lands by the defendants previous to the commencement of the action, and that the value of such pine logs so cut and removed was $873, with interest from the commencement of the action.  The defendants appealed to this court from the

whole judgment; and the plaintiffs appealed from that part of the judgment which awards to the plaintiffs the sum of $914.33 as damages for the cutting and removing timber from said lands before the commencement of the action, on the ground that the damages awarded were not large enough.

Upon the defendants' appeal the whole case depends upon the question of title. They claim under George Runkel, the grantee named in a tax deed purporting to have been issued by Monroe county upon a sale for the nonpayment of taxes assessed thereon in 1869. The tax deed was in legal form, and was issued and recorded in the office of the register of deeds for Monroe county on July 16, 1873. The lands described in the deed were unoccupied by any one for three years after the date and recording of the tax deed. There is no dispute but that whatever title Runkel had under his tax deed was conveyed to the defendants previous to the commencement of this action, and before the defendants cut and removed any timber from the lands. The plaintiffs showed a chain of title from the government to themselves before the action was commenced, and before the timber was cut by the defendants. The evidence also shows that George Runkel and wife, the grantee in said tax deed, on the 25th of February, 1874, and before he had conveyed his right and title under said tax deed to any other person, in consideration of the sum of $50 to him in hand paid by L. E. Amidon, who was then one of the joint owners of the original title from the government, executed and delivered a quitclaim deed of said lands to the said L. E. Amidon; that said deed was duly signed, sealed, and acknowledged by the said Runkel and wife, but was witnessed by only one witness. Such deed purported on its face to convey to the said Amidon all the right, interest, and claim whatsoever of said Runkel and wife in and to said premises to the only proper use and benefit of the said Amidon, his heirs and

assigns. Said deed was not recorded in the office of the register of deeds until January 3, 1882, and after the defendants had acquired their title by subsequent conveyance from Runkel and had recorded their deed. The deed so taken by Amidon was taken for the benefit of himself and William D. Fox, who was a joint owner with him at the time of the original title to said lands. The defendants, and those under whom they claim, purchased without actual notice of the quitclaim deed from Runkel and wife to Amidon. Neither Runkel nor any person claiming under him ever paid any taxes on said lands at any time after the sale for the taxes of 1869, and the plaintiffs, and those under whom they claim, have always paid the taxes on said lands since the sale of 1870. If, therefore, the defendants have any title to said lands under their deed from Runkel, it is a purely technical legal title, not supported by the shadow of an equity.

Upon this state of facts it is claimed by the defendants that the three-years limitation ran in favor of those claiming under the tax deed, notwithstanding the fact that the grantee in such deed released his right under such deed to the original owners of the land before the expiration of said three years; in fact, before the expiration of one year. On the other hand, it is claimed by the plaintiffs that the tax claimant having released his right to the original owner within the three years next after the recording of the tax deed, the three-years statute ran in favor of the original owner, or that under that state of facts the statute did not run in favor of either party and the validity of the tax deed must be determined without regard to the statute of limitations. After a careful consideration of the very able argument of the counsel for the appellants upon this question, we are inclined to hold that the learned circuit judge was right in holding that such quitclaim deed by the tax-title claimant to the original owner within the three years next after the recording of his tax deed, was an abandonment

and surrender to such original owner of the constructive adverse possession which arose in his favor by virtue of his taking such tax deed and placing the same on record, and which constructive adverse possession set the statute of limitations running in his favor; and that when that constructive adverse possession ceased by such abandonment and surrender of it to the original owner, the statute of limitations ceased to run in favor of his title, and thereafter it ran in favor of the original owner, and barred any right of action in favor of those claiming under the tax deed after the expiration of the three years from the recording thereof.

This court has repeatedly decided: (1) That if the tax-title claimant has been in the actual adverse possession of the lands described in the tax deed for three years next after the recording of the tax deed, the right of the original owner to show any irregularities in the tax proceeding is absolutely barred, even though the tax deed may be void upon its face. (2) That if such actual possession has been interrupted by any one claiming under the former owner during said three years, then the statute does not bar such owner's right, but, on the contrary, the statute runs in favor of the original owner; and unless the person claiming under the tax deed brings his action within the three years he is barred from maintaining any action to assert his rights under said deed. *Lewis v. Disher*, 32 Wis. 504; *Gunnison v. Hoehne*, 18 Wis. 268; *Lawrence v. Kenney*, 32 Wis. 281, 293; *Jones v. Collins*, 16 Wis. 594; *Dean v. Earley*, 15 Wis. 100; *Lain v. Shepardson*, 18 Wis. 59; *Cutler v. Hurlbut*, 29 Wis. 152; *Wilson v. Henry*, 35 Wis. 241; *Haseltine v. Mosher*, 51 Wis. 443. (3) That when the tax deed is in due form and recorded in the proper office, and the lands described therein remain vacant and unoccupied for three years or more after the recording thereof, the tax-title claimant is deemed to be in the constructive adverse possession, and the statute runs in his favor, and the original owner is barred from attacking its validity. *Austin v. Holt*, 32 Wis. 478;

*Lawrence v. Kenney*, 32 Wis. 281. (4) The bar of the statute is held to run in favor of the tax claimant in the case last stated, upon the presumption of fact that the recorded tax deed creates a constructive adverse possession in favor of the tax claimant, which, if continued for the three years, is as effectual to bar the original owner as an actual adverse possession for the same length of time.

It is held by this court that this constructive adverse possession is based upon the presumed claim made by the grantee in the tax deed to the premises described therein, evidenced by his taking such deed and placing the same upon record, as against the original owner not having any actual possession; and it is also held that such constructive adverse possession is at once interrupted and destroyed by an actual possession taken within the three years by the original owner, or by any one claiming under him; and it seems equally clear that any act on the part of the tax-title claimant which is inconsistent with his supposed adverse constructive possession, would also interrupt and destroy the same.  If he releases his claim during the three years to the original owner, such release interrupts his constructive adverse possession, and from the date of such release the statute ceases to run in his favor.  Having, in fact, abandoned his constructive adverse possession within the three years by such release, he can no more transfer to his grantee the right to set up such constructive adverse possession as a bar to the right of the original owner, than he could if he had released and surrendered an actual adverse possession to such owner during said three years.

The nature of this constructive adverse possession of the tax claimant when the lands are vacant, which causes the statute of limitations to run in favor of such claimant, was considered in the case of *Lewis v. Disher*, 32 Wis. 504, 507. In that case Chief Justice Dixon says:

" The constructive possession of unoccupied land, which

follows the tax deed and vests in the grantee, is, for all the purposes of the statute of limitation and of becoming conclusive evidence of title under it, of the same nature, and operates in the same way and with the same force, as an actual adverse possession for the same period of time, where a possession of the latter kind is taken and relied upon as a bar under the statute. The constructive possession is in this respect of the same nature, and the force and effect of it is the same, as the twenty years adverse possession without color of title, or the ten years with, under the other statutes limiting the time within which actions for the recovery of real estate must be brought. The constructive possession is an adverse possession, and the nature of such a possession, or what it must be, when it is actual, is well understood and defined in the law. It is well settled that an actual adverse possession, to be available as against the true owner, and to operate to bar his rights and to transfer the title to the adverse claimant, must have been continuous and uninterrupted during the period of limitation prescribed, and that any cessation of such possession, or pause or intermission in it, or any re-entry and actual and peaceable occupation and holding by the true owner, before the period of limitation has expired, will restore such owner to his original right, and defeat the prescription of the adverse claimant, or postpone it so that he can thenceforth only assert or hold by virtue of it from the time his adverse possession is renewed and shall be thereafter continuously maintained and held. This doctrine was examined and fully recognized by this court in *Sydnor v. Palmer*, 29 Wis. 226. See, also, *Haag v. Delorme*, 30 Wis. 591. And so strict is the rule that it has been held, if the adverse possession be broken *but for a day*, its effect is entirely destroyed, and, so far as that possession is concerned, it is at an end. And in some cases the interruptions of simple trespassers, when quite decided and indicative of claim, have been declared to be sufficient to

break the continuity and defeat the adverse possession. Tyler on Ejectment and Adverse Enjoyment, ch. 51, pp. 907, 910, 911, and authorities cited. There is no reason why the rules thus established with respect to an actual adverse possession and enjoyment, should not also apply to and govern an adverse possession which is constructive. We think they do apply and govern, and that the constructive possession of unoccupied land, to be effective as conclusive evidence of title in favor of the grantee in the tax deed, and to bind and conclude the former owner, must be continuous from the date of the recording of the tax deed to the full end and expiration of the three years prescribed by the statute."

I have made this extended quotation from the opinion of the learned chief justice for the reason that I consider it conclusive upon the point raised in the case at bar.

It is clear from the opinion above cited that if the tax-title claimant had taken actual adverse possession under his deed, and during the running of the three years and while in such actual possession he had acknowledged the right of the original owner, and consented to hold the possession in the future subordinate to the title of such original owner, the statute would cease to run in favor of the tax deed; and if, after so acknowledging the right of the original owner and holding subordinate to his title, he conveyed his title to a third person who had no knowledge of such arrangement, such grantee would not be in any better position in regard to his title, so far as adverse possession and the statute of limitations is concerned, than his grantor; and, according to the reasoning in the case above cited, the constructive adverse possession which sets the statute running and keeps it running in favor of the tax deed, being of the same nature as an actual adverse possession, it can be interrupted in the same way by an abandonment thereof by the grantee in the deed, or by surrendering such constructive

adverse possession to the original owner. And the fact that such surrender or abandonment is not made known to his grantee does not in any way affect the running or not running of the statute in his favor. See *Knox v. Cleveland*, 13 Wis. 245, 252.

For the purposes of this case it may be admitted that the release of the tax claimant to the original owner, not having been recorded, would not affect the title of the grantee of the tax claimant who purchased without notice; but the only title he would get in such case would be the title actually conveyed by the tax deed. If his grantor's title has been barred by the statute of limitations having run against it and in favor of the original owner, his right under the deed would also be barred; and if the statute of limitations has run in favor of the tax deed he would take the title perfected by such limitation. The registry act has nothing to do with the question of title which is acquired or lost by adverse possession. A title so acquired or lost depends wholly upon the acts of the parties not appearing upon the records, and not protected or affected thereby; and a grantee, who claims that his grantor's title has been perfected by such adverse possession, must establish such adverse possession by the same proofs that would be required of his grantor, and his claim would be defeated by the same proofs that would defeat his grantor. Upon this question the registry acts neither make for or against his claim of title.

In this view of the case the learned circuit judge was right in holding the tax deed no protection to the defendant, and his judgment in favor of the plaintiff must be affirmed.

The plaintiff has also appealed, on the ground that the court erred in not awarding him greater damages, and claims that he was entitled to damages under sec. 4269, R. S. 1878. Upon the facts in the case it appears that the defendants were acting in good faith claiming title to the land;

and as the action on the part of the plaintiffs is an equitable action to establish their title to the lands in controversy, and to recover compensation for the waste done thereon by the defendants, it is not an action under said statute, and consequently the rule of damages prescribed by it is not applicable to this case. The damages awarded are in accordance with the rule established by this court previous to the enactment of said statute, and that rule is the equitable rule under the facts of this case.

Orton, J. I am unable to concur with my brethren in the decision of this case, and therefore respectfully dissent from the opinion filed therein. In the start, it must be understood that the lands in question have been all the time wild and entirely unoccupied. The original owners were Fox and Amidon, although they had contracted to sell to Robertson and Thompson, when the tax deed from Monroe county was executed to Runkel and recorded, July 16, 1873. Amidon purchased the lands from Runkel, February 23, 1874, in consideration of $50 paid for these and other lands, and Runkel gave Amidon a quitclaim deed. This deed was not entitled to record, and its pretended registration in 1882 was no notice, constructive or otherwise, of it. The circuit court calls this a redemption of the lands from taxes. But, in the first place, it was too late for redemption after the recording of the tax deed, and, in the next place, not a single statutory requirement of redemption was complied with. If there had been redemption according to law, there would have been record notice of it to subsequent purchasers, but there was not. All that appeared to the world or third persons at the end of three years after the recording of the tax deed was that the land was, and had been all the time, unoccupied, with no attempt by any one to take actual possession of it or any part thereof, and that Runkel had an absolute title by the statute of limitations of three years, by

the repeated decisions of this court, and that all of the de-
fects in the tax proceedings complained of in this action
were cured.

In 1877 Runkel conveyed to the firm of Runkel & Free-
man, and they conveyed to Abbott, and in 1880 Abbott, by
warranty deed, conveyed to the defendants; and all those
conveyances were duly recorded soon after their execution.
The plaintiffs claim under the original owners, Fox and
Amidon. By taking a quitclaim deed from Runkel in 1874
they recognized his tax title. If they had put that deed on
record, or had taken possession of the lands, then there
would have been at least constructive notice to all persons
who should purchase of Runkel that the three-years limita-
tion had been broken and the recording of the tax deed
rendered ineffectual. The transaction between Fox and
Amidon and Runkel was *secret*. Between themselves, that
would make no difference; but when Runkel comes to sell
and convey a title which, by registration, was paramount
and unquestionable, without open and actual possession
which would have been sufficient notice in itself, or the
recording of the deed of Runkel to Fox and Amidon, which
would have been notice by the statute, or by actual notice
given, or knowledge sufficient to imply it, then the case is
quite different. This is precisely the condition of the case,
in brief. There is no question that the grantees of Runkel
and their successors in the title, including the defendants,
were purchasers in good faith and for a valuable considera-
tion, which the statute (sec. 2241, R. S.) makes the only
conditions of their full protection against unrecorded deeds
and rights of which they had no notice whatever, actual or
constructive.

If Fox and Amidon had conveyed to Runkel, and the
deed had been duly recorded, and then within the year
Runkel had reconveyed to Fox and Amidon, and that deed
had not been recorded, or actual possession taken under it,

and the defendants had purchased from Runkel without any notice of the last-mentioned deed, and had placed their deed on record, and they were in all respects purchasers in good faith and for a valuable consideration, then would there be any doubt that they would be fully protected by this statute? This is not controverted. But here is a case where Runkel has obtained the title of Fox and Amidon, as the original owners of the lands, by a tax deed which is at once duly recorded, and then within a year he conveys the lands back to Fox and Amidon, secretly, by deed never recorded. The lands remained unoccupied and unredeemed, and the taxes were unpaid, and nothing existed which, under the statute, broke the continuity of Runkel's constructive possession by the registry of the tax deed. Then, after the three-years limitation, when, by the statute, his constructive possession had ripened into an absolute title of record, the defendants, without any semblance of notice, in perfect good faith, and for a valuable and adequate consideration, purchased the lands and have their deed duly recorded, and go into actual possession. Are they not in such a case entitled equally to the protection of the statute? The statute itself says that they are.

This tax deed is a *conveyance*, as the word is used in the above section, because it is "an instrument in writing, by which an estate and interest in real estate are created, alienated, and assigned, or by which the title of real estate is affected in law and equity." Sec. 2242, R. S. This tax deed "vested in the grantee an absolute estate in fee-simple in said lands," "and may be recorded *with the like effect* as other conveyances of land." Sec. 1176, R. S. What does this language mean, if it does not mean that a *bona fide*, subsequent purchaser for a valuable consideration, who holds by virtue of a recorded tax deed, shall be protected precisely the same from the effect of previous unrecorded deeds without notice as any other purchaser. All such un-

recorded deeds are made void as against such a subsequent purchaser, whether such purchaser holds by an ordinary deed or by a tax deed.   This question is settled beyond dispute by the statute itself.   If, then, the purchaser by tax deed, or his grantees, are thus protected, why should they not also be protected as against any and all secret equities of which they had no notice?   If the original owner of land sold for taxes, after the tax deed is recorded and the land remains vacant, may secretly collude with the purchaser and obtain what title he had by a quitclaim deed never recorded, and the holder of such tax deed can then go into market and find an innocent purchaser, and sell to him for a valuable consideration, and such purchaser has no notice of anything except the registration of the tax deed and the expiration of the three years after such registration and the unoccupancy of the land all the time during such period of limitation, then the statute gives such an innocent purchaser no protection whatever, and such lands are virtually rendered *inalienable* and such a title of no value, and the whole scheme is one of fraud and deception and the instrument of wrong.   If such purchaser cannot be protected by the statute and by law and equity, like other *bona fide* purchasers, as against the original owner, no one will buy, and a tax deed duly recorded, after the expiration of the period of statutory limitation of unoccupied land, with no notice, actual or constructive, of any conveyances or equities against it, which this court has frequently held is the best and most conclusive title in the world, is worse than worthless, for it can be used as the means of defrauding and greatly injuring innocent purchasers.

· These statutes to which I have referred, were passed for the purpose of inducing the owner of land to pay his taxes under the penalty of losing his title by delay until the statute has cut him off, and such purpose is thereby de-

feated. The statute has provided specifically what may defeat such a title, and such expression of what may do so excludes all other causes, by a familiar rule. If the taxes had been paid, or if the lands had been redeemed, such a title would be defeated. But these are matters of record and constructive notice; and so, as to the actual possession of the land by the original owner at any time within the period of limitation, it is notice — and fair notice — to a subsequent purchaser, just as much as the registration of a deed. These will not injure a subsequent purchaser, for he buys with ample notice of them. But if you go beyond these statutory provisions, and import into the statute other provisions which make other facts and circumstances, of which the purchaser has not and could not have notice, defeat his title, it is judicial legislation, and vicious legislation at that. To hold that such *secret dealings* between the original owner and the first holder of the tax deed during the period of limitation, by some strange fiction and stranger process of reasoning, may be set up to defeat the title of a subsequent *bona fide* purchaser who has obtained a clear and unquestionable title of record, on the theory that such secret dealings have broken, interrupted, or terminated the constructive possession implied by the registration of the tax deed, repeals all of the above provisions of the statute made for the protection of innocent purchasers, and abolishes every principle of equity. You would better make such a purchase criminal, and punish the purchaser by fine and imprisonment; for then he would know what to expect, and purchase with notice. Every statute in the statute book can be frittered away by such theories and such methods of reasoning.

We have seen that such a purchaser is protected, like all other purchasers under the same circumstances, by the statute. Such, also, are the decisions of this court. In *Oconto Co. v. Jerrard,* 46 Wis. 317, Chief Justice RYAN said

in his opinion: "It was said on the argument that, in up-holding title by tax deed under the statute of limitations, the court can indulge in no presumption, but must hold the party to the very letter of the statute. That may be granted; but the statute of registry does not admit, and the court cannot favor, any distinction between the registering of a tax deed and the registering of any other deed." In *Hill v. Kricke*, 11 Wis. 442, the present chief justice, in speaking of the registration of a tax·deed and the expira-tion of the period of limitation, said: "By sec. 123, ch. 15, R. S. of 1849, an action for the recovery of the lands was completely barred unless the respondent could show *that the taxes had been paid, or the lands had been redeemed accord-ing to law.*" The statute is the same now. But it has now been discovered that a great many other things may be shown, and *secret* things, too, against the bar of the statute. In *Lombard v. Culbertson*, 59 Wis. 433, the question was whether the tax deeds had been properly recorded, and it was held that they must be recorded as other deeds; and, in speaking of the object of such registration, Mr. Justice TAYLOR says: "It is evident from the reading of these sec-tions that the object of the registry laws, 'viz., *to give notice to subsequent purchasers of the conveyance*, can only be secured by making the correct entries in the index required to be kept by said section."

It appears to me that it is certain to a demonstration that the defendants, as purchasers in good faith and for a valuable consideration, relying upon these very registry laws which this court has often said were made for their protection, and upon records and registration of the tax deed, cannot be defeated, according to any principle of law or equity, by proof of what *secretly* transpired between the original owners and their grantor. There was no redemp-tion, as Chief Justice COLE said, "according to law," and the taxes had not been paid, and there was no actual pos-

Warren and others vs. Putnam and another.

session during the period of limitation to afford any constructive notice, and there was no actual or constructive notice of the quitclaim deed by Runkel to Fox and Amidon.

I regret that I am compelled to dissent from the decision of the majority of the court in this case, and regret also that this dissenting opinion is so long. ' But the question is one of great importance, as it affects the alienation of lands and the construction of the tax laws of the state. I may be wrong, but I never felt more certain of being right. Besides this, unless I fail to apprehend the import of the decisions of this court in the cases cited in the opinion in this case, they will be virtually overruled as to the legal effect of adverse constructive possession under a recorded tax deed. The main case relied on, of *Lewis v. Disher*, 32 Wis. 504, most clearly establishes the doctrine for which I contend, viz., that the constructive possession created by the registration of the tax deed is precisely the same, in legal effect, as an *actual* adverse possession, and that nothing will break the continuity of such an adverse *constructive* possession, except the intervention, at some time during the three-years limitation after the recording of the tax deed, of an *actual* possession by the original owner. It seems to me that the citation of this case to sustain the decision is a clear misapplication of an authority which is directly against it.

Lyon, J. I concur with Mr. Justice Orton in this opinion.

*By the Court.*— The judgment of the circuit court appealed from by the defendants is affirmed, and that part of the judgment appealed from by the plaintiffs is also affirmed.