WARREN and others, Appellants, vs. PUTNAM and another, Respondents.

*March 5 — March 22, 1887.*

*Logs and timber: Damages for cutting: Good faith: Mistake of law.*

> One who acquired title to land with knowledge of facts which rendered such title invalid, or who learned such facts before cutting the timber, is not protected by sec. 4269, R. S., as amended by ch. 239, Laws of 1882, but is liable for the highest market value of the timber cut by him, even though he believed that such facts did not in law invalidate his title. But mere notice that another person claims to own the land is not inconsistent with good faith in cutting the timber.

APPEAL from the Circuit Court for *Monroe* County. The case is stated in the opinion.

Warren and others vs. Putnam and another.

For the appellants there was a brief by *I. C. Sloan* and *E. W. Helms,* and oral argument by *Mr. Sloan.*

For the respondents there were separate briefs by *Bleekman, Tourtellotte & Bloomingdale,* attorneys, and *Pinney & Sanborn,* of counsel, and the cause was argued orally by *Mr. Sanborn* and *Mr. Bleekman.*

TAYLOR, J.   The plaintiffs brought their action to recover damages against the defendants for wrongfully cutting down and carrying away a large quantity of pine trees standing upon the land of the plaintiffs, and manufacturing the same into lumber at their mill situated in this state, and the plaintiffs claimed as damages the value of said lumber at the rate of $12 per thousand feet.   The defendants by their answer admit the wrongful cutting and carrying away said pine trees and timber, and the manufacture of the same into lumber by them, but they contradict the allegations of the complaint as to quantity and value.   They then set up facts which they claim bring them within the provisions of ch. 239, Laws of 1882, and offer to allow judgment to be entered against them for the sum of $606.60 and the costs of the action, which they allege is the full amount of the damages the plaintiffs are entitled to recover in the action.

There is no denial of the wrongful cutting and conversion of the plaintiffs' pine timber by the defendants, and the plaintiffs are, under the decisions of this court, entitled to recover as damages, under the provisions of sec. 4269, R. S., "the highest market value of such logs, timber, or lumber, in whatsoever place, shape, or condition, manufactured or unmanufactured, the same shall have been at any time before the trial while in possession of the trespasser," unless the defendants, by their answer and proofs upon the trial, have brought themselves within the provisions of said ch. 239, Laws of 1882.   This chapter adds the following proviso to said section:   "Provided, that in all actions hereafter

commenced, when the defendant shall have in good faith acquired a title to and entered upon the land under the same, believing such title to be valid, and shall have cut the timber therefrom under such circumstances, then the plaintiff, if he shall recover, shall recover only the actual damage sustained by reason of such cutting. The defendant in his answer shall state the facts upon which he relies to establish such claim of title, and the burden of proof shall be on the defendant."

The facts established on the trial were in substance as follows:

*First.* The plaintiffs showed title in themselves derived from the government, appearing of record.

*Second.* At the time the defendants acquired their title to the land from which the timber was afterwards cut, a tax deed had been issued in due form by the county of Monroe, bearing date the 15th day of May, 1873, to one George Runkle, which had been duly recorded in the office of the register of deeds of said county; that for more than three years after the recording of said tax deed the said lands had remained wholly unoccupied; that the title which Runkle obtained by said tax deed had been duly conveyed, by a regular chain of title, from said Runkle to the defendants; and that under such title the defendants entered and cut said logs.

*Third.* That at the time the defendants acquired their said title they had no knowledge, actual or constructive, that said Runkle had within the three years next after the recording of his tax deed, and before he made a conveyance thereof to James F. Freeman in 1877, under and through whom the defendants obtained their title, released and conveyed all claim he had to said lands under and by virtue of said tax deed to the original owners of said lands, under whom the plaintiffs now claim title.

*Fourth.* That before the defendants cut and removed the

timber mentioned in the complaint in this action, the plaintiffs, on the 26th of January, 1882, commenced an action against said defendants to recover damages for other timber cut and removed from said lands by the defendants before the commencement of said action, and in their complaint in said action they set out the fact that the said Runkle had in February, 1874, conveyed all his interest in said lands by virtue of his tax deed, to one L. E. Amidon, under whom the plaintiffs in said action claimed title to the lands in question. And the plaintiffs in said action further set out facts showing that the tax deed issued by said county of Monroe was void by reason of certain irregularities in the tax proceedings. To the complaint in such action the defendants answered, setting up title under said tax deed, and claiming to be purchasers in good faith of the apparent title of said Runkle. In said action it was held that the tax deed to Runkle was void for irregularities in the tax proceedings, and that, as Runkle had released all claim under said tax deed to the owners of the original title, the grantors of the plaintiffs, before said tax deed had been of record three years, the statute of limitations did not run in favor of said deed so as to make the same a valid title in the hands of his grantees subsequent to such release, though such grantees were purchasers without notice of such release. The judgment of the circuit court was affirmed by this court. See 63 Wis. 410.

*Fifth.* During the pendency of that action the timber in question in the present action was cut and removed by the defendants.

Upon these facts the learned circuit judge instructed the jury, among other things, on the question of the good faith of the defendants in cutting the logs in question, as follows: "Now, defendants were sued, and they had notice in that action, by the pleadings, of just exactly what the plaintiffs claimed. This action was commenced in January,

Warren and others vs. Putnam and another.

1882. In the fall of 1882, or during the winter of 1882 or 1883, the defendants went onto that land for the purpose of taking off the rest of that timber, and at that time they had full and complete notice of all that the plaintiffs claimed. Now, can it be said that they entered in good faith? It was suggested by counsel that they had been in possession all the while. I don't think that position can be supported. They went on in the winter of 1881 and 1882, and committed a trespass, and went on again in the winter of 1882 and 1883, and committed another trespass; and at the time they went on in 1882 and 1883 they knew just exactly what the plaintiffs claimed. Now, did they come in good faith? Not under any definition of good faith that I know of. It could not be held that they did. They came on with notice. They came prepared to take the chances of their title at that time, and they did take their chance, and they must abide by it. The law is conclusive, under such circumstances, that if they cut that timber and failed to establish their title in the action, that they would be liable to pay the highest value of the lumber manufactured, and that they did it with their eyes wide open. They chose to take that chance, and they must abide by the chances they took. For these reasons, explained imperfectly as they are, I shall feel obliged to advise the jury that they must hold that the trespass was not in good faith, within the meaning of the law. . . . You have probably heard the statement I have just made to the attorneys in regard to my view of the law on this question of good faith. Now, I think that if you shall find the fact to be that, at the time when the defendants entered upon this land for the purpose of cutting and removing the timber, they knew that the plaintiffs claimed to own it, then they were not in good faith. They were bound, if they knew the plaintiffs owned it, to take notice of the plaintiffs' title just as it should prove to be upon the trial of that action."

After the jury had been instructed, they returned into court and asked the court to further instruct them upon the question of good faith under the statute, and the learned judge further instructed them as follows: "This question of good faith. I was afraid, after I sent you out this morning, that I hadn't stated sufficient to you so that you would understand this question fully. I stated to you that if you were satisfied from the evidence that at the time when the defendants went upon this land and cut the timber which is in controversy in this action, *and they knew that the plaintiffs claimed to own it, that then they were not in good faith;* and, perhaps, I ought to say to you that there is no dispute on that question from the evidence. You ought not to have any trouble upon that question, gentlemen. The evidence is undisputed that there was an action pending by the plaintiffs against the defendants to determine the title to the land, commenced on the 27th day of January, 1882, and that this timber was cut in the winter of 1882 and 1883. There is no dispute about those facts; and if they cut this timber *when they knew the plaintiffs claimed it,* then they took their own chances of the title, and were not in good faith. They must abide by the chances they chose to take. That I think is the law, and that is the law which should govern you. If I am mistaken about it, the supreme court will correct me, but you follow the law as this court gives it." To these instructions the defendants duly excepted.

After a verdict for the plaintiffs, in which the jury found that the entry of the defendants upon the plaintiffs' land, and the cutting and removal of the timber therefrom, was not in good faith; that the actual damage sustained was $926; and that the highest market value of the lumber manufactured from such timber was $3,704,— on motion of the defendants for a new trial the learned circuit judge came to the conclusion that he had erred in instructing the

jury as to what would constitute good faith under the statute, and made the following order in the action:

"The motion of the defendants for a new trial herein, or that judgment be entered on the verdict of the jury in favor of the plaintiffs for the smaller sum mentioned in said verdict, having been duly argued before the court, and the court being sufficiently advised in respect thereto, it is ordered that unless the plaintiffs elect to and do enter herein judgment upon said verdict for the lesser sum mentioned therein, with interest from April 1, 1883, pursuant to the statute, within thirty days after service upon the attorneys for the plaintiffs of a copy of this order, that then and in that event said verdict be set aside and a new trial of this action be granted, with costs to abide the event. And it is further ordered that this order be entered as of the 17th day of October, 1885, being the last day of the October term, 1885, of the said court in said county. And it is further ordered that plaintiffs' motion for judgment on the verdict for the value of the manufactured lumber — that is to say, the sum of $3,704 — be, and the same is hereby, denied."

From this order the plaintiffs appeal to this court.

The important question in this case is whether, at the time the defendants cut the timber in question, they were justified in believing they had a valid title to the lands upon which it was standing. It seems to us that it cannot be argued with any degree of plausibility that the defendants could have in good faith acquired a title to said lands, within the meaning of said ch. 239, Laws of 1882, if, at the time they purchased such title, they had knowledge of all the facts which as a matter of law rendered their supposed title invalid. Without holding that in order to acquire in good faith a title to land, within the meaning of said act, it is necessary that the defendant should have acquired it under such circumstances as would render him a *bona fide*

purchaser without notice of another outstanding and better title, we think it must be held that when, at the time of his purchase, he has knowledge of all the facts which show the invalidity of his title and the fact that a better title exists in another, he cannot be said to have in good faith acquired such title. In a case of that kind there is no mistake of fact or any want of knowledge of facts upon which to base his good faith. And the good faith, if there be any, is based upon a question of law applicable to the facts. The mistake, if there be one, is a mistake of the law and not of fact. The general rule is that parties must be conclusively held to know what the law is, and a mistake as to what the law is upon a certain state of facts is no defense either in a civil or criminal action. We do not think the legislature intended to abrogate this well-established rule in order to screen trespassers from responding in the larger damages given by the other provisions of said sec. 4269, R. S. If a defendant, with a full knowledge of all the facts which the law says renders his title invalid, can insist that he believed it to be a good title and acquired it in good faith, because he was so advised by counsel, there would be but a slight chance for the owner of standing timber to protect himself against the trespasser.

Under the law as it stood before the amendment of 1882, this court never held that the defendant could excuse himself from responding in the larger damages because he made a mistake as to his title, and in some of the cases it is strongly intimated that such mistake was not a mistake within the meaning of the law. The following cases, involving, to some extent, the construction to be given to said sec. 4269, R. S., have been decided in this court: *Webster v. Moe*, 35 Wis. 79; *Brewster v. Carmichael*, 39 Wis. 456; *Webber v. Quaw*, 46 Wis. 122; *Wright v. E. E. Bolles Wooden Ware Co.* 50 Wis. 169, 171; *Haseltine v. Mosher*, 51 Wis. 443; *Tuttle v. Wilson*, 52 Wis. 643; *Smith v. Sherry,*

54 Wis. 114, 130; *Schweitzer v. Connor*, 57 Wis. 177; *Brown v. Bosworth*, 58 Wis. 379; *Warren v. Putnam*, 63 Wis. 418, 419; *Smith v. Morgan*, *ante*, p. 358. In the last case it was held that a defendant who held an unforfeited school-land certificate could not avail himself of the proviso to said sec. 4269, as amended, for the reason that upon the face of the certificate he was forbidden to cut such timber, and that it could make no difference that the defendant supposed he had a right to remove the timber, and so testified upon the trial.

We have no reason for thinking that the legislature intended to provide for such a mistake by the amendment of 1882. Had such been the intention of the legislature, it seems to us that other language would have been used to express such intention. Under the rule above stated it may be that when the defendants acquired their title to said lands, they acquired it in good faith, and entered on the land believing such title to be valid; and, had they cut and removed the timber before acquiring any other knowledge as to the validity of their title, they may have brought themselves within the statute. But the statute says the timber must be cut under like circumstances. We do not think it a protection to the defendant that he acquired his title in good faith, believing it to be valid, if after acquiring such title, and before he cuts and removes the timber, he is fully informed of the invalidity of his title. After he receives such information he can no longer claim title to the land in good faith; and if thereafter he strips the land, he must do so at the risk of establishing his title, or pay the larger damages. It is perhaps difficult to determine with precision what was meant by the act of 1882; but we think we are not running across either the meaning of the language used or the intention of the legislature, by holding that a defendant in an action brought under said sec. 4269, R. S., as amended, is not protected by the

proviso added in 1882, when he purchases a title with full knowledge of the facts which render it invalid, or when, after making his purchase and before committing the trespass, he is informed of such facts. When the facts are all known, and the party rests his legal rights upon the law applicable to such facts, he does not invoke the protection of the statute, which gives him the benefits of a purchaser in good faith without notice of the title of the other claimant, but he asserts as a matter of law that both the right and the title are with him.

In this view of the case it is clear the learned circuit judge was mistaken in his construction of the statute upon the motion for a new trial, and that he erred in setting aside the verdict for the reasons stated in his opinion upon such motion. We are, however, of the opinion that the learned circuit judge erred in his charge to the jury when they returned into court and requested further instruction as to what was necessary to constitute good faith under the statute. It will be seen, by an examination of the instructions then given to the jury, that they were told, in substance, that if, at the time the defendants cut the timber, they knew that the *plaintiffs claimed to own the lands,* then the defendants could not be said to have cut the timber in good faith, believing that they had title to the lands. This instruction was stronger in favor of the plaintiffs than was given in his original charge, and may have induced the jury to render the verdict they did upon this question. We do not think a mere notice to the defendant that the plaintiff claims to own the lands in controversy is sufficient to prevent a defendant from availing himself of the provisions of the statute. He must have notice of the facts upon which the plaintiff's claim of title is based, and of the facts which render the defendant's title invalid. It may be that there was sufficient evidence in the case to have justified the jury in finding that the defendants had knowledge of

all the facts which rendered their title invalid and affirmed the title of the plaintiffs, before the trespass was committed; but, under the instructions of the learned judge, the jury were not called upon to pass upon that question.

· The instructions given to the jury as above stated were duly excepted to by the defendants, and for this reason a new trial was properly granted in the case. The condition upon which the order granting a new trial was made, is one which the plaintiffs may accept or refuse in their discretion, and they cannot be said to be injured by it.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for a new trial, unless the plaintiffs shall elect to take judgment for the sum specified in the order granting the new trial.