Finn and others vs. The Wisconsin River Land Co.

FINN and others, Respondents, vs. THE WISCONSIN RIVER LAND COMPANY, Appellant.

*October 12 — November 8, 1888.*

*Tax titles: Limitation of actions: Adverse possession.*

1. Sec. 4212, R. S., being designed to supply certain conditions of actual adverse possession, but not to exclude others, it is not necessary, under sec. 1190, in order to prevent the running of the three years limitation in favor of tax deeds, to show an actual possession of the character specified in said sec. 4212.

2. If, during the three years next after the recording of a tax deed, the former owner actually and exclusively occupies the land in hostility to the title of the grantee in such deed, and subjects the land to his will and dominion by actual and appropriate use thereof, according to its locality, quality, and character, the evidences of such occupancy being tangible and visible to a person going upon and examining the land, such occupancy and use constitute adverse possession by such former owner.

APPEAL from the Circuit Court for *Lincoln* County.

This is an action in equity, brought to remove a cloud upon the plaintiffs' title to certain land in Lincoln county, to wit, the E. ½ of the S. W. ¼, and the W. ½ of the S. E. ¼, of section 36, town 31, range 7 east. The land was purchased from, and patented by, the government, in 1860, to one Daniel Finn, the father of the plaintiffs, who died intestate in 1880 seized thereof. The plaintiffs are his only heirs at law, and claim to own the land as tenants in common by descent from their father, and to have the actual possession thereof. The alleged cloud upon the title consists of three tax deeds, alleged to be invalid, executed by the proper officer to one John Comstock, and a conveyance of the land by Comstock to the defendant corporation, the *Wisconsin River Land Company*. One of these tax deeds is based upon the sale of 1879 for the delinquent taxes of 1878, and is dated and was recorded May 31, 1882. It conveys the W. ½ of the S. E. ¼. Another of such deeds is

based on the sale of 1881 for the delinquent taxes of 1880, and is dated and was recorded May 21, 1884. This deed conveys both eighty-acre tracts. The remaining tax deed is based on the sale of 1882 for the delinquent taxes of 1881, and is dated and was recorded June 13, 1885. It conveys the E. ½ of the S. W. ¼. This action was commenced September 12, 1887.

The complaint alleges that the plaintiffs are the owners of the land in question as tenants in common; that they are jointly in the actual possession thereof, and have been ever since May 31, 1882, and before; and that, for reasons therein stated, each of said tax deeds is invalid. The usual relief in actions *quia timet* is demanded. The answer of the defendant denies most of the material allegations of the complaint. It also alleges that the land was vacant and unoccupied at the time the tax deeds were recorded, and so remained for more than three years thereafter, and claims the benefit of the statute of limitations in that behalf.

The court found as facts that the plaintiffs were, at the commencement of the action, the absolute owners in fee-simple and in the actual possession of the land described in the complaint. The particulars of such possession and the continuance thereof, as found by the court, are hereinafter stated. The court also found that the two oldest tax deeds were barred by the limitation of three years prescribed in sec. 1187, R. S., as amended by sec. 1, ch. 309, Laws of 1880; and that the tax deed of 1885 is void for omissions and irregularities in the tax proceedings, not going to the validity of the assessment, nor affecting the ground-work of the tax.

The conclusion of law, deduced by the court from the foregoing facts, is, in substance, that the plaintiffs are entitled to the relief demanded in the complaint, upon paying into court for the defendant the amount for which the land was sold in 1882 for the delinquent taxes of the pre-

ceding year, and the statutory interest thereon, prescribed by sec. 4, ch. 309, Laws of 1880. The plaintiffs paid the amount into court as required, and judgment for the plaintiffs was thereupon entered, for the relief demanded in the complaint, pursuant to such conclusion of law.

The finding of the court on the subject of possession is as follows: "That long prior to May 31, 1882, and ever since that time, the plaintiffs have been in the actual, open, and exclusive possession of each of said forty-acre tracts of lands; that the plaintiffs have every year been upon all of said lands a number of times, to see whether any trespasses were being committed thereon, looking over the timber, and running out lines upon which to build roads for the purpose of getting out some of the timber and fire-wood; that said lands have thereon a large quantity of pine, hemlock, elm, bass-wood, maple, birch, etc.; that, during a portion of the winter of 1882–83, some of the plaintiffs, with the consent of all, went upon said west half of the southeast quarter, and the southeast quarter of the southwest quarter, and cut roads through the same for the purpose of getting out fence-rails and fire-wood for use on their farms, and cut and removed a quantity of fence-rails and fire-wood from said lands; that during each of the winters of 1883–84, 1884–85, and 1885–86 some of the plaintiffs, with the knowledge and consent of all, occupied said lands a large portion of each winter, clearing out old roads, and building new ones on each of said forties, and in cutting and removing therefrom considerable timber each winter, some of which was for use and was used in building a log barn for one of the plaintiffs, some was cut into saw-logs and hauled to the mill and manufactured into lumber and used in building and repairing buildings on the farms of plaintiffs, some was cut and used for joists, sleepers, shakes, rafters, and some hewn to square timber for sills; and in each of said winters they took off fire-wood from said lands in quantities nearly sufficient for the use of

one of the plaintiffs on his farm; that in cutting and removing said timber said plaintiffs used roads constructed by them, running to and over all of said tracts, and in taking said timber and in building said roads plaintiffs went upon said lands as the owners thereof, and cut and removed said timber as aforesaid in such quantities as they desired for use; that most of said timber so cut was growing hemlock and hard-wood and dry pine,— but few green pine trees being cut,— and that plaintiffs were endeavoring to hold or preserve said pine for future use; that the occupancy of the plaintiffs during said winters was not accidental, but was open and notorious and continuous in the usual manner that lands are occupied for such purposes; that in the winter of 1886–87 the plaintiffs occupied said lands by taking off one piece of long square timber from the N. W. ¼ of the S. E. ¼, and cutting fire-wood from the two south forties, and plaintiffs also took off dry pine for fire-wood in the summer of 1887, and went upon the northeast quarter of the southwest quarter to look after trespass."

In order to show the true character of such possession, it should be further stated that the land in question joined the homestead farm of Daniel Finn, the ancestor of the plaintiffs; which farm has not been partitioned between the heirs, and is occupied as a residence and cultivated by the plaintiff *James Finn* and his sisters, the plaintiffs *Ella* and *Anna Finn*.

The defendant appeals from the judgment.

*W. F. Bailey,* for the appellant, to the point that plaintiffs' possession of the lands was not adverse, cited *Warren v. Putnam,* 63 Wis. 415; *Pepper v. O'Dowd,* 39 id. 538; *Sparrow v. Hovey,* 44 Mich. 63; *Austin v. Holt,* 32 Wis. 478; *Williams v. Wallace,* 78 N. C. 354; *Washburn v. Cutter,* 17 Minn. 361; *Parker v. Parker,* 1 Allen, 245; *Hole v. Rittenhouse,* 37 Pa. St. 116; *Potts v. Gilbert,* 3 Wash. C. C. 475; *Wells v. Austin,* 59 Vt. 157; *Beaupland v. McKeen,* 28

Pa. St. 124; *Thompson v. Burhans*, 79 N. Y. 99; *Miller v. L. I. R. Co.* 71 id. 384; Sedg. & Wait's Trial of Title to Lands, sec. 736.

For the respondents there was a brief by *Bump & Hetzel*, and oral argument by *H. C. Hetzel.*

LYON, J. The learned counsel for the defendant frankly admits (and such is undoubtedly the fact) that the finding of the circuit court on the subject of possession is supported by the evidence. He maintains, however, with much earnestness and ability, that notwithstanding the existence of the facts so found the land in question was vacant and unoccupied during the entire three years next after the recording of the tax deeds of 1882 and 1884, respectively; and hence that the three years limitation of sec. 1188, R. S., as amended by sec. 2, ch. 309, Laws of 1880, had fully run in favor of those deeds before this action was commenced. If this proposition is true, the defendant is the absolute owner of the land, and the plaintiffs cannot maintain this action.

The accuracy of the findings to the effect that the tax deed of 1885 is irregular and void, and of the sum the plaintiffs were required to pay into court for the defendant on account thereof, pursuant to sec. 4, ch. 309, Laws of 1880, are not controverted by counsel for defendant.

It is obvious, therefore, that the controlling question which this appeal presents for determination is, Was the land described in the complaint vacant and unoccupied from May 31, 1882, or from May 21, 1884 (the dates of recording the tax deeds), for three years next ensuing either of these dates? If it was so vacant and unoccupied during either of such terms of three years, the limitation of the amended sec. 1188, R. S., has run in favor of at least one of these tax deeds, and the action cannot be maintained, because in such case the tax deed, instead of being a mere cloud upon the plaintiffs' title to the land, is conclusive evidence that

the defendant is the absolute owner thereof. On the other hand, if during both of those terms of three years the plaintiffs were in the actual adverse possession of such land, or, the same being vacant when either of the tax deeds was recorded, if the plaintiffs, during the next three years, took actual adverse possession, thus disseizing the defendant of his constructive possession under his tax deed, then the limitation of sec. 1187, R. S., as amended, has run against the deed in favor of the plaintiffs. If such limitation has run against both tax deeds, the defendant has no estate or interest in the land by virtue of them, and the deeds are clouds upon plaintiffs' title from which they are entitled to be relieved in this action. In such case the judgment herein granting such relief should not be disturbed.

Counsel for defendant seems to maintain that under sec. 1190, R. S., to prevent the running of the three years limitation in favor of the tax deeds, the plaintiffs must show an actual possession by them, during such term, of the character specified in sec. 4212, R. S. Sec. 1190 provides, in substance, that the possession of land, and the extent thereof, within the meaning of secs. 1187 and 1188, "shall be governed by the rules prescribed for determining an adverse possession by a person claiming title founded upon a written instrument." Those rules are prescribed in sec. 4212. The position is not well taken. It was held in *Wilson v. Henry*, 40 Wis. 594, that the statute contained in the Revision of 1858, corresponding with sec. 4212 of the present Revision, was designed " to supply certain conditions of actual adverse possession, not to exclude others." In the opinion in that case by RYAN, C. J., the question is fully discussed, and many cases determined by this and other courts are cited in support of the rule there established by this court. The present case furnishes an apt illustration of the application of the rule. If an adverse possession can only be established by proof of the acts specified in sec.

4212, it could not be held that the defendant, who claims under tax deeds, had adverse possession of the land, even though the same was vacant, for the statute does not extend to such a case; yet his defense in this action rests entirely upon the proposition that he had the constructive adverse possession of the land.

As applied to this case, the true rule undoubtedly is that, if the plaintiffs actually and exclusively occupied the land in question in hostility to the defendant's title, and subjected the same to their will and dominion by actual and appropriate use thereof, according to its locality, quality, and character, the evidences of such occupancy being tangible and visible to a person going upon and examining the land, such occupancy and use constituted adverse possession by the plaintiffs.   On this subject, generally, we refer to 1 Am. & Eng. Encyc. Law, tits. "ADVERSE POSSESSION," p. 225, and "ACTUAL," p. 184$g$, and numerous cases cited in the notes.   This work, now in process of publication, is ably edited, and bids fair to become a most valuable addition to our legal literature.   We are of the opinion that the findings of the court upon the subject of possession make a case, under the above rule, of adverse possession of the land by the plaintiffs from the time the tax deeds were recorded to the commencement of the action; that is to say, that the land was never vacant and unoccupied after the recording of those deeds, and hence that the three years limitation ran against and barred any claim of title under such deeds.

If we assume the land vacant when either tax deed was recorded, in which case the limitation of sec. 1188 commenced at that time to run in favor of the grantee therein, then it is clear that during the ensuing three years such grantee was repeatedly disseized by the plaintiffs; which disseizin stopped the running of the limitation in favor of such tax-title grantee, and the plaintiffs' continual occupation thereafter turned the limitation in their favor.   *Sydnor v.*

*Palmer*, 29 Wis. 226; *Haay v. Delorme*, 30 Wis. 591; *Lewis v. Disher*, 32 Wis. 504. The subject is fully discussed in those cases, particularly in the latter, and the rules here indicated established. Further discussion is unnecessary.

The point was made in argument that the possession of the plaintiffs was taken in bad faith, and for the purpose of defeating the tax title. We do not find in the record any such evidences of bad faith as will prevent a court of equity from granting the relief prayed.

*By the Court.*— The judgment of the circuit court is affirmed.