THE ST. CROIX LAND AND LUMBER COMPANY, Respondent, vs. RITCHIE, Appellant.

*December 19, 1890 — January 13, 1891.*

(1) *Tax titles: Unoccupied lands: Statute of limitations: Adverse possession.* (2) *Timber wrongfully cut: Measure of damages.*

1. Occasional fugitive acts of occupancy by the original owners of wild timber lands, such as cutting timber upon portions thereof to repair a dam on another tract, mowing an acre or two of marsh land, and allowing the cattle from their logging camp on an adjoining tract to forage thereon, do not interrupt the running of the statute of limitations in favor of the holder of a recorded tax deed.

2. The purchaser of standing timber from the original owners of the land was told about the sale of the land for taxes, and purchased subject to the right of the tax title claimant. In replevin by the owner of the tax title for timber cut by such purchaser, the latter is *held* not to be protected by sec. 4269, S. & B. Ann. Stats., as one who had acquired title in good faith and had cut the timber believing such title to be valid, but to be liable under said section for the highest market value of the timber.

APPEAL from the Circuit Court for *Taylor* County.

Replevin for a quantity of pine logs cut in 1888 by the defendant upon lands alleged to belong to the plaintiff company. The answer denied the plaintiff's ownership, and alleged that the lands belonged to R. E. Rust, Laura Rust, and John F. Rust and wife, and that in 1887 the said owners had conveyed to the defendant all the pine timber thereon, with license to enter upon the lands and cut and remove such timber. Other allegations of the answer, and the evidence given on the first trial of the action, will sufficiently appear from the report of a former appeal in 73 Wis. 409. A second trial by the court without a jury resulted in a judgment for the plaintiff, from which the defendant appeals.

*W. F. Bailey*, for the appellant.

For the respondent there was a brief by *Clapp & Macartney*, and oral argument by *N. H. Clapp*.

COLE, C. J. The question in this case is, Had the plaintiff title to the land from which the timber in controversy was cut, at the time of such cutting? It derives its title through a tax deed which was executed to Taylor county, and recorded on the 20th day of August, 1880. When the case was here on a former appeal, it was decided that this tax deed was in due form and was properly recorded. 73 Wis. 409. It is alleged in the answer that the premises are wild and unoccupied, and have been vacant since they were entered from the government, save and except the occupa-

tion by the original owners, and that the plaintiff has not the title to them. The inquiry therefore is, Does the proof in the case show such possession and acts of ownership upon the land on the part of the original owner as will interrupt the running of the statute of limitations in favor of the grantee under the tax deed? This is really the only material question in the case, and must be resolved by the evidence given on the trial.

The tax deed included eleven forties in section 11, township 33 N., of range 1 E. The lands were not cultivable until they were cleared up, and their chief value and use was for lumber purposes. The trial court found that, from the time the logging season of the year 1877–78 ended until the month of October, 1880, neither Mr. Owen (who represented parties who, for convenience, are spoken of in the testimony as "the Rusts") nor any one of the original owners of the lands entered upon the same or occupied the same for any purpose connected with the business of cutting or removing the pine timber from the lands, but that during that time they were occupied in cutting and removing pine timber from other lands in the same and adjoining townships, having their logging camps located on such other lands or some portions thereof; that the Rusts occupied the logging camp upon section 12, adjoining section 11, during the summer of each year, having a man in charge thereof, and that some portion of the cattle which they used in their logging operations upon their lands, other than those described in the complaint, were in charge of this man, who permitted the cattle to roam indiscriminately over the lands contiguous to section 12, without reference to whether the lands were owned by the Rusts or other persons, and said cattle were once or twice in each week gathered together upon section 12 by this man; that, during the first year that the Rusts or other persons were engaged in their logging operations upon the lands de-

scribed in the complaint, they built a flooding dam to aid
them in driving the logs which were cut off from the lands,
which dam was built upon the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of
section 11; that this dam remained and was used for flood-
ing purposes in subsequent years, until the summer of 1880;
that a freshet carried away the south wing of the dam, and
that in October, 1880, the Rusts entered upon the land
where the dam was situated for the purpose of repairing
the same, so that the dam might be used the next driving
season to aid them in driving logs cut off from their other
lands; that the parties were engaged one month in repair-
ing the dam; that the greater portion of the timber which
was required and used in constructing the south wing of
the dam was cut from the S. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section 11,
but that some timber was taken from other portions of sec-
tion 11; that the evidence does not disclose definitely what
particular forty-acre tracts the timber was taken from, the
same being taken promiscuously wherever the men hap-
pened to find a piece which they deemed suitable, whether
the same was taken from land which was previously owned
by the Rusts or by other parties, but that it was clear that
no part of the timber was taken from the S. E. $\frac{1}{4}$ of the N.
E. $\frac{1}{4}$, the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$, or the N. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$.

We have given these findings in full for the reason that,
though some of them are excepted to, they state fairly the
possession and acts of ownership relied on to defeat the
running of the statute in favor of the tax deed claimant.
The tax deed was recorded in August, 1880, as we have said,
and the acts of possession must be confined to the period of
limitation subsequent to that time. It will be observed
that these acts are fugitive and occasional, and do not evince
any claim of ownership to the different tracts mentioned in
the complaint. They consisted mainly of cutting some
trees upon some of the forties, of letting cattle forage over
them, and of mowing an acre or so upon the northwest

corner of the section. But the acts are of such a character that they do not amount to an assertion of ownership, even as to the forty-acre tract where they were committed or done, and certainly do not indicate any claim of right over the other tracts. Had the Rusts paid the taxes assessed against the land after the tax deed was recorded, this might tend to explain the equivocal nature of these acts, which are as consistent with a mere trespass as a claim of title. There was no actual occupancy of any of the lands in hostility to the title of the grantee of the tax deed, nor was any act done which in any way should interrupt the constructive possession which followed the recording of that deed.

The acts of occupancy necessary to interrupt the running of the statute must be something more than occasional and temporary intrusions upon the land. They should be open and notorious, and continue unbroken for a sufficient time to give notice to the persons interested that a claim of right is intended by them. In *Finn v. Wis. R. Land Co.* 72 Wis. 546, it is said by Mr. Justice LYON that the true rule undoubtedly is that, if the plaintiffs actually and exclusively occupied the land in hostility to the defendant's title, and subjected the same to their will and dominion by actual and appropriate use, according to its locality, quality, and character, the evidence of such occupancy being tangible and visible to a person going upon and examining the lands, such occupancy and use would constitute adverse possession. The cutting of timber occasionally on some of the forty-acre tracts, or the mowing of an acre or two of marsh lands, or the foraging of cattle upon the lands, would not necessarily interrupt the running of the statute upon the tax deed. In the *Finn Case*, the acts of the plaintiffs, who claimed under the original owner, were of a distinct and unequivocal kind, manifesting an intention of asserting title and ownership of the land. The acts of possession in the case

The St. Croix Land and Lumber Co. vs. Ritchie.

at bar were not as public and demonstrative as in the cases where the court has held them sufficient to interrupt the statute and bar the tax title claimant. See *Smith v. Sherry*, 54 Wis. 114.

It will be remembered that the dam which was maintained and repaired was not on any of the tracts in question, and the logging camp was on an adjoining section. In *Coleman v. Eldred*, 44 Wis. 210, it was decided that actual adverse possession of some forty-acre tracts in a section does not amount to constructive adverse possession of other lands in the same section, and in that case the rule in *Lewis v. Disher*, 32 Wis. 504, as to what acts of ownership and occupancy by the former owner, or by any person from him, during the period the statute was running, should disengage the bar of the statute, was reaffirmed. We do not now refer to constructive adverse possession of land which is used as a part of an uninclosed lot, or as part of a farm, which is mentioned in *Pepper v. O'Dowd*, 39 Wis. 538, but to vacant and unimproved lands, as these were, which were used for lumber purposes. And we do not think that the acts relied on in the present case should work an interruption of the constructive possession under the tax deed. There was no definite claim of title or possession, but what was done on the lands in dispute was incidental to repairing the dam on other lands.

We do not think there is any ground for saying the timber was cut under a mistake as to the title. Mr. Owen, who acted for the original owners, testifies in effect that when he sold the timber to the defendant he told him all about the taxes, and that the timber was sold subject to any rights the tax title claimant might have in the land. This negatives the idea that the defendant acted in cutting the timber under a mistake as to the title. The defendant cannot, on the facts claimed, claim the protection of the statute.

*Warren v. Putnam*, 68 Wis. 481.[1]  He had knowledge of all the facts which showed the invalidity of his title or of the title of his vendor, and the fact that a better title existed in another.  He cannot therefore be said to have in good faith acquired the title, and entered upon the land believing such title to be valid.  *Warren v. Putnam, supra.*  We cannot see that under the circumstances any effect, therefore, can be given to the attempted redemption in May, 1882, so far as the question now before the court is concerned.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.