FLANDERS, Respondent, vs. WASHBURN LAND COMPANY, Appellant.

*April 20—May 11, 1909.*

*Tax titles: Quieting title of owner: Limitation of actions: "Vacant or unoccupied:" Necessity of payment or tender of taxes paid by tax-title claimant.*

1. Where a tract of 120 acres of timber land was surveyed, stakes set at the corners, and the boundaries blazed on trees, one forty having on it a small clearing and farm buildings, occupation of the house from time to time while engaged in growing and harvesting crops and removing timber, leaving furniture in the house and hay in the barn when away, together with occasional passing over the whole tract to guard against trespass and fires, warrant a finding that the land was not vacant and unoccupied within the meaning of sec. 1187, Stats. (1898), providing for constructive possession under recorded tax deeds.

2. Constructive possession under a recorded tax deed only ripens into an absolute title where the lands remain vacant and unoccupied continuously during the whole period named in the statute.

3. Sec. 1190, Stats. (1898), defining what shall constitute "possession" within the meaning of the preceding sections, relates to the meaning of that word in secs. 1187 and 1189, rather than to the meaning of the words "vacant and unoccupied."

4. Where the statute of limitations has divested the title of the tax-deed claimant, in an action to quiet title the original owner is not required, as a condition of recovery, to tender or pay any part of the taxes.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

A. W. McLeod, for the appellant.

W. W. Downs and E. C. Alvord, for the respondent.

TIMLIN, J.   The respondent, grantee of John Carroll, who held under a homestead patent from the United States dated July 18, 1898, began this suit against the appellant to quiet title to the north half of the southwest quarter of

section 20, township 50 north, of range 5 west, after May, 1905. The appellant claimed this land under tax deed for the delinquent taxes of 1898 issued and dated May 20, 1902, and recorded May 21, 1902, in the office of the register of deeds of Bayfield county, in which county the land lies.

Respondent comes to this court with judgment of the court below in his favor, based on the finding that, during the three years next succeeding the recording of appellant's tax deed, he and his grantor, John Carroll, were in possession of the land in question. It is contended that this finding is unsupported by the evidence. But it appeared that John Carroll on May 31, 1898, made the usual proof of occupancy as a homestead necessary to obtain a patent from the United States for the land in question, together with another eighty-acre tract adjoining it, and thereafter granted away one forty-acre tract of this quarter-section, leaving him with the eighty acres in question and the northwest quarter of the southeast quarter of said section 20 adjoining the land in question on the east of the latter. Upon the northwest quarter of the southeast quarter Carroll had at the time patent was issued and theretofore his homestead, a log dwelling eighteen by thirty feet, a log barn sixteen by eighteen feet, a hay shed fourteen by sixteen feet, and a clearing of four or five acres. He had the 120 acres surveyed, stakes set at the corners, and the boundaries "blazed on trees." He had a team of horses on the land, lived in this house and farmed the small clearing, and used the adjoining land in question here for taking off shingle, timber, fence rails, wood, and cedar, and he continued this residence and occupation until 1900. He was succeeded by one Bjorkland, who occupied the dwelling for about a year as tenant of Carroll. When Carroll moved out of the dwelling house he left his bed, stove, and dishes in the log house and his implements and utensils on the land, and returned periodically and farmed on the small clearing, planted potatoes, cut and cured hay, and cleared and con-

structed a road upon the land in dispute, went over the same to guard against trespass or fires, and sold or gave away some timber therefrom, permitting others to enter for that purpose, and also cut and removed timber for different purposes.    Carroll sold the land to the respondent in the fall of 1904, and during the year following, by arrangement with respondent, Carroll occupied the land to the extent last described and raised and took away a crop of potatoes and hay from the small clearing.    He occupied the house from time to time while engaged in these operations and also the hay shed for storage.    There was also testimony to the effect that the designation of boundaries and manner of use and occupation by Carroll was that customary among homestead claimants or owners; and the land was generally known as Carroll's homestead, and there was also evidence that at least as early as January 14, 1903, and after the issuing and recording of the tax deed in question, the holder of this tax deed knew that Carroll was claiming possession and ownership of the land covered by the tax deed.    Much of this evidence was controverted, it is true, but we are to consider the evidence most favorable to support the finding.

From the foregoing it was permissible to infer that the acts of ownership and possession of Carroll were not intermittent or transitory, because they all referred to his occupancy of the house, barn, and small clearing upon part of the tract, all held and claimed by him under the same grant, and because they succeeded actual and continued occupation and were in conformity to usages among people in that vicinity circumstanced as he was.    Carroll's possession was not in any sense clandestine, but according to its nature, and in conformity to the usages of that vicinity, was visible and notorious in that it was well known and unmistakable and known to the holder of the tax deed.    The land was not, therefore, within the meaning of sec. 1187, Stats. (1898), "vacant and unoccupied."    The case in this respect is ruled by *Finn v.*

*Wis. River L. Co.* 72 Wis. 546, 40 N. W. 209, where the use and occupation of the land was of the same general character as that shown by the evidence in the instant case. There must be, as said in the case last cited, "actual and appropriate use thereof according to its locality, quality, and character; the evidences of such occupancy being tangible and visible to a person going upon and examining the land."

Furthermore, it has been decided that "the constructive possession of the tax-deed claimant only ripens into an absolute title when the lands remain vacant and unoccupied continuously during the whole period named in the statute." *Midlothian I. M. Co. v. Belknap,* 108 Wis. 198, 200, 84 N. W. 152, and cases cited. It would be quite difficult to affirm, upon the evidence in this case, that the land in question remained continuously vacant and unoccupied from May 20, 1902, the date of the tax deed, to May 20, 1905. If there is anything in *Daggett v. Reas,* 79 Wis. 60, 48 N. W. 127, inconsistent with *Midlothian I. M. Co. v. Belknap,* 108 Wis. 198, 84 N. W. 152, the latter case must prevail. Sec. 1190, Stats. (1898), defining what shall constitute possession within the meaning of foregoing sections, relates to the meaning of that word in secs. 1187 and 1189, Stats. (1898), rather than to the meaning of the words "vacant and unoccupied." Therefore there seems to be evidence warranting the finding of the circuit court, at least to the extent that such finding affirms that the land was not continuously vacant and unoccupied during the three years in question, and this is included in the broader affirmation of the finding that the land was during that time in the possession of the respondent and his grantor. The statute of limitations having divested the title of the tax-deed claimant and vested title in the respondent, the appellant's interest in the land or under the tax deed was at an end, and the respondent was not required, as a condition of his setting aside the deed, to tender or pay any part of the taxes under sec. 3087, Stats. (1898).

The respondent did not recover "by reason of a defect or insufficiency of any tax deed . . . or in the proceedings prior to the sale." Nor was the action in ejectment. The case is therefore not within the purview of sec. 3087. Nor is it within the terms of sec. 1210*h,* because the action does not impeach the tax deed. It would seem upon principle that when the statute of limitations has divested the tax-title holder of all estate or interest in the land, his tax deed is at an end for all such purposes.

*By the Court.*—The judgment of the circuit court is affirmed.