LAFFITTE, Appellant, vs. CITY OF SUPERIOR, Respondent.

*February 3—February 22, 1910.*

*Tax titles: Limitation of actions: Possession after recording of tax deed: Landlord and tenant: Equity: Quieting title to land: Refunding taxes paid by claimant.*

1. In respect to occupied property affected by a tax deed, the statute of limitations acts like a two-edged sword. It cuts both ways, operating in favor of the possessor "to bar the title of whichever party—the original owner, or the tax-title claimant—was, during the three years next after the recording of the tax deed, under the necessity of resorting to legal proceedings to obtain possession."

2. The nature of possession necessary to set the statute of limitations running either way, in respect to a tax deed, is the same as required to constitute adverse possession by a person claiming title founded upon a written instrument.

3. The rule last above does not require the possession to have all' the characteristics mentioned in sec. 4212, Stats. (1898), but there must be that complete dominion over the property, appropriate to ownership of such property similarly situated, by acts sufficiently significant and continuous to reasonably inform the adversary, if he pays reasonable attention to his affairs, that his right is defied.

4. Merely exercising some rights of ownership by one of two adversaries, the other not being in fact dispossessed so as to render the possession of that one not only hostile and notorious but exclusive, is not sufficient.

5. Merely surreptitiously obtaining recognition by a tax-deed claimant as landlord, from a tenant of the former owner who continues in possession under such circumstances as to reasonably induce such owner to rely upon the former relations of landlord and tenant continuing, does not work any change of possession so as to turn the statute of limitations from running against the tax deed to running in its favor.

6. Taking actual possession of a portion of one lot in an inclosed platted block, under a tax deed covering the entire block, leaving another portion of the block in actual possession of the former owner by his tenant, residing thereon, and doing no act as to the balance of the block but surreptitiously obtaining from the tenant recognition as landlord, the former owner appropriating and using the balance of the block, as before—does not change the running of the statute of limitations so as to favor the tax-deed title, except as to that part of the land actually occupied by the invader.

7. After the status shall have been fixed, as before stated, of actual occupancy of part of the inclosed block by the invader and such occupancy of part by the tenant of the former owner, whether acts of ownership by such owner, occurring as to the balance of the block, are unknown to the tax-title claimant, is immaterial, so long as they are open and notorious.

8. A tax-deed claimant having induced the former owner's tenant in possession to take from him a lease of the property, the ostensible lessees continuing in possession as before without any apparent change of attitude toward the former owner, evidence of a declaration by the tenant to such owner denying any relations with such claimant recognizing him as landlord, is competent on the question of knowledge of such owner of attornment by such tenant to such claimant.

9. When a statute of limitations shall have fully run against a right, the same is extinguished and a new right created of equal dignity with the one destroyed, as regards constitutional protection.

10. When the right of a tax-title claimant shall have been extin-
guished by the statute of limitations, a right is created in favor
of the real owner to have the cloud upon the title created by
the record of the tax deed, and of any subsequent deed referable
thereto, removed and, incidentally thereto, a right exists to an
appropriate remedy in that regard, unburdened by any equity
in favor of the one whose rights have ceased to exist to refund
taxes paid or to compensate for tax liens acquired by him.
    [Syllabus by Marshall, J.]

Appeal from a judgment of the circuit court for Douglas
county: A. J. Vinje, Circuit Judge. *Reversed.*

Action to quiet title. The pleadings were in the usual
form presenting the question of whether the claimants of the
land in controversy, as possessors of the patent title, had
been in possession of such land during the three years suc-
ceeding the execution of the tax deed, under which defendant
claimed, so as to extinguish by force of sec. 1188, Stats.
(1898), the latter title, or defendant took possession of the
premises under the tax-deed title and held the same adversely
to the original owner during the three years succeeding the
recording of such deed so as to, under such section and sec.
1187, extinguish the original title.

The following facts were undisputed and found accord-
ingly: The holder of the original title did not pay the tax
assessed on the property after 1891. In due form taxes
were levied thereon each year and returned delinquent. In
1905, by tax deeds, fair on their face, based on a sale of the
property for delinquent taxes, the property was conveyed
to Douglas county, and February 17, 1906, the tax title,
by a deed in due form, was conveyed to the defendant.
The property consisted of ten lots in the platted portion
of Superior city, Douglas county, Wisconsin, known as
block 69. On lots 1 and 10, forming the westerly side of
the block, there was a dwelling house and a barn which
existed during all the period herein mentioned and for a
long time prior thereto. The block was inclosed by a fence.
In 1902, the plaintiff and another, who then represented
the original title, leased lots 1 and 10 and the buildings

thereon to one McCloud who resided thereafter thereon,
as a tenant, till the time of the trial. He agreed to pay
rent at the rate of $2.50 per month and paid some thereof
at irregular intervals. Some time after he took possession
and before the date of the tax deed, the tenant, at the re-
quest of the landlords, repaired the fence making it a sub-
stantial inclosure of the block. In February, 1907, defend-
ant took down the fence at the rear of lot 5 sufficiently to en-
able it to move a building onto the back part of such lot, the
building being placed thereon for the purpose of taking pos-
session of the entire block under the tax-deed title. Defend-
ant used the building for election purposes twice each year
thereafter but did no other acts of ownership on the block
except, in March, 1907, it procured McCloud to sign a lease,
he, in form, thereby becoming its tenant of lots 1 and 10 at
a monthly rental of $3. Plaintiff acted in concert with an-
other, they together representing the original title to the
whole block. During all the time of dealing with McCloud
as tenant under the holder or rightful representatives of the
original title, the actor in the matter was plaintiff's associate.
Plaintiff became possessed of the entire original title subject
to the tax title before the commencement of this action. He
and his associate knew of the delinquent taxes, the execu-
tion of the tax deed, the placing of the building on lot 5, and
claim of defendant under the tax deed, substantially as the
events occurred, but there is no direct evidence that they
knew of the claimed relations of landlord and tenant between
McCloud and defendant.

The court found these additional facts: Neither plaintiff
nor his associate, representing the original title, collected or
demanded any rent of McCloud after the building was placed
on lot 5, or thereafter exercised any act of ownership over
any part of the block, except some grass was cut under the
direction of one of them but without defendant's knowledge
that the cutting was under such direction. Defendant's of-
ficers had every reason to believe from the time the building

was placed on lot 5 till long after the tax deed was more than three years old, that the holder of the original title had, as the fact is, abandoned the property. McCloud did not occupy any part of the block except the two lots covered by his lease, or do anything with reference to the same other than to repair the fence as aforesaid and to occasionally pasture his cow on the vacant lots. Defendant had actual possession of all of the block from the time it placed the building on lot 5 till the commencement of this action.

On the facts so found the court concluded that the original title was fully superseded by the tax title and the statute of limitations relied on by defendant and rendered judgment accordingly.

*D. E. Roberts,* for the appellant.

For the respondent there was a brief by *Thos. E. Lyons* and *T. L. M'Intosh,* and oral argument by *Mr. M'Intosh.*

MARSHALL, J. It seems to be conceded, as the fact is, that unless respondent under its tax-deed title, within the three years after the recording of such deed, took adverse possession of that part of the block in question not occupied by its building, and held such possession until the termination of such period, then as to that portion, not so adversely possessed, the statute of limitations ran in favor of the original title extinguishing the tax title, leaving only the deed, as to the latter, a cloud on the record as to the former title, rendering it competent for plaintiff to maintain an action to remove such cloud. The law is well settled as to that.

The statute of limitations acts both ways. In case of occupied lots it extinguishes the tax title of the claimant thereunder, who does not assert his right by excluding the original owner or commencing an action to obtain possession within the three years, and it extinguishes the right of the former owner if the tax-title claimant becomes adversely possessed of the land within the three years and such owner fails to assert his right by regaining possession or commencing an

action therefor within such period. *Edgerton v. Bird,* 6 Wis. 527, and note; *Knox v. Cleveland,* 13 Wis. 245; *Parish v. Eager,* 15 Wis. 532; *Lindsay v. Fay,* 25 Wis. 460. The gist of the decisions of this court on this subject is concisely stated in an extensive note to *Edgerton v. Bird, supra,* in these words:

"This statute, like a two-edged sword, cut both ways, and operated in favor of the possessor to bar the title of whichever party—the original owner, or the tax-title claimant— was, during the three years next after the *recording of the tax deed,* under the necessity of resorting to legal proceedings to obtain actual possession."

The nature of the possession necessary to set the statute running against the tax deed is definitely laid down by sec. 1190, Stats. (1898), as follows:

"What shall constitute a possession of lands within the meaning of the preceding sections and the extent of such possession shall be governed by the rules prescribed for determining an adverse possession by a person claiming title founded upon a written instrument."

That does not mean that the possession must have all the characteristics mentioned in sec. 4212, Stats. (1898). There may be such possession without such characteristics. There must be actual dominion over the premises by acts appropriate to ownership of property of such character similarly situated; acts of a tangible nature appropriate to challenge the attention of any adversary that he has been wholly excluded from possession. *Finn v. Wis. River L. Co.* 72 Wis. 546, 40 N. W. 209; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 445, 84 N. W. 855, 85 N. W. 402. Of course mere occasional intrusions not reasonably calculated to attract attention, are not sufficient, but acts sufficiently continuous to reasonably attract such attention of one whose right is defied, if he pays ordinary heed to his affairs, is sufficient whether his attention is attracted to the real situation in fact or not. *St. Croix L. & L. Co. v. Ritchie,* 78 Wis. 492, 496, 47 N. W. 657.

Thus it will be seen that, in order for a tax-title claimant to set the statute of limitations running in his favor, he must take exclusive possession and hold it, exclusively and notoriously, so as to reasonably afford notice to the former owner of the adversary condition. To merely exercise some acts of ownership, the former owner not being in fact dispossessed but also exercising some such acts, is not sufficient any more in case of an adverse holding under a tax deed than under any other. That was declared in the early case of *Jones v. Collins*, 16 Wis. 594. In that case there were conflicting acts of possession and they were held not sufficient to warrant a finding of exclusive possession by the tax-title claimant so as to satisfy the statute, the court saying:

"The whole evidence shows that there was a constant squabble and contest in respect to the possession, between those acting on behalf of the estate of Jones and those claiming under the tax deeds. We shall not enter upon any discussion of the testimony upon the question of possession, and shall content ourselves with stating the conclusion we deduce from it. And to our minds it fails to show that those claiming title under the tax deed so dispossessed or disturbed the possession of the estate of Jones in the premises as to lay the foundation of the three years' limitation under the statute. . . . It cannot be said there has been any adverse possession under the tax deeds to the exclusion of the true owner. And to entitle a party to the protection of the statute when he claims to have been in the *actual possession* under a tax deed, he ought to show that his possession is open and exclusive. Otherwise we think no foundation is laid for the adverse possession contemplated by the statute."

There is another principle firmly established as to this class of cases. It is this: Where there is a tax deed upon land occupied by the former owner represented by a tenant, the tax-title claimant cannot obtain possession adverse to such owner by surreptitiously securing for himself recognition as landlord and collusively maintaining with such tenant such relations while the tenant, at the same time, apparently to the true owner, makes no sign of any change in

the former relations. That is plainly the effect of *Pulford v. Whicher,* 76 Wis. 555, 45 N. W. 418, and *Pulford v. Whicher,* 87 Wis. 576, 58 N. W. 1104.

Now neither the findings nor the evidence indicates that the respondent did anything but place the old building on the rear end of a corner lot of block 69 and obtain the signature of the tenant to a lease of the two lots occupied as aforesaid for a long time, whereby such two lots were in form leased by respondent to such tenant at $3 per month. There is nothing in the finding to indicate that plaintiff knew of the latter circumstance before this action was commenced, and nothing to show that there was any act by the tenant other than the signing of the lease, suggesting that he had turned to respondent as landlord. There is no finding that he ever paid to respondent any part of the stipulated rental, nor that the latter ever did any act in or about or concerning the buildings, by way of repairing or insuring the same or otherwise, as is usual and natural for a landlord to do. The evidence is as silent in respect to the matter as the findings, from which the inference is very strong that no such act occurred. The only circumstance, openly challenging appellant's position, was placing the old building, as indicated, which was left vacant, except for a day at each spring election and a day at each fall election, in case of there being any. In the meantime, as we read the record, the relations between the tenant and appellant and his associate Foltz, representing the patent title, did not change from what they were before the origin of respondent's claim. The case shows quite clearly that the tenant was maintained on the premises by the owners under the original title for the purpose of possession. The rent was nominal and was paid or not at the tenant's convenience.

The latter, doubtless, was willing to face both ways so long as by so doing he could thereby secure free use of the property. One side was lenient with him by not making any pressing demands, thereby promoting ostensible loyalty to

them, while the other was still more lenient by not making any demand for rent at all, thereby securing sufficient loyalty in its direction to prevent the tenant from disclosing to appellant or his associate Foltz its claim to be the true landlord.

Under the circumstances stated, it seems very plain that there were no relations between the tenant and respondent which affected the possession of the former owners. So far as the finding of the court was grounded on the claimed relations of landlord and tenant between respondent and McCloud, either that from and after the building was placed on lot 5 the former owner abandoned the block to the tax-title claimant, or that such claimant, from the time of such placing and the signing of the written lease by McCloud, was in the actual exclusive possession of the block, it cannot be approved.

The finding is to the effect that one season the grass on the block was cut under the direction of the former owner, but that such circumstance was immaterial because respondent had no knowledge at the time of the cutting or thereafter that it was under such direction.

The conceded circumstance of cutting the grass was not given proper significance. It is immaterial whether the respondent knew that it happened by the authority of the former owners or not. If the cutting of grass was open and in all respects consistent with the claim of ownership and such circumstance alone or in connection with others was reasonably sufficient to indicate to any one concerned, if he was paying the ordinary attention to the property, of an owner, that possession was claimed by appellant and his associate, adverse to the tax title, that was sufficient to charge respondent with the true situation whether he had actual knowledge thereof or not.

It seems that the finding limiting the acts of ownership, adverse to the tax title, to the one circumstance of cutting grass, is contrary to the clear preponderance, if not the un-

disputed evidence. Foltz testified that the grass was cut by him, or for him, every year but one, and that the tenant cut it the one year by his direction. That evidence seems to be rather corroborated by the other evidence in the record, than disputed. On the whole, it is to the effect that the entire block, except that part occupied by the tenant, up to the sides of the old building on lot 5, was used for the appropriate purpose of pasturage or raising grass, and that all acts in respect thereto were done without objection by respondent.

The further finding that the former owner did not demand nor receive any rent from the tenant after the building was placed on lot 5, seems to be wrong. The undisputed evidence is that rent was paid within the three years before the commencement of the action. True, the evidence suggests that the payments left the tenant still indebted, somewhat, for the period before the origin of respondent's claim, but it is quite plain that whatever was paid was on account, as if the tenancy was continuous, McCloud, up to the last, holding himself out to the former owners as their tenant, and actually denying to them that he had recognized respondent's claim in any way. The evidence in that regard was stricken out on motion and due exception was taken. We consider it was competent on the question of notice of any adverse relation between McCloud and respondent. The circumstance that very little rent was collected of McCloud was explained by Foltz. He testified, in effect, that the revenue feature was considered of little consequence; that McCloud was permitted to live on the property to maintain possession and take care of the property.

The learned circuit judge may have been influenced to a considerable extent in making the finding that the former owners abandoned the property to respondent from and continuously after the origin of its claim, from the fact that they did not pay any taxes thereon. That circumstance is given much significance in the finding. It seems that it was entitled to little or no weight since the action of the owners,

as regards the taxes, was no different after the recording of the tax deed than it had been for many years before. It seems very certain from the amount of the taxes, and other circumstances, that the owners omitted to pay them, thinking they were unenforceable because of illegality.

On the whole, we are unable to discover that there was any substantial change in the actual possession of the property by those representing the patent title, after the execution of the tax deed and before the commencement of this action, from what it had been for more than ten years before, except as to that part of lot 5 upon which respondent placed its building. It never had exclusive, if any, possession of any other portion of the block. The fact that the block was an entirety, so far as the inclosure was concerned, did not render the breaking of the fence and placing of the building on lot 5 a taking possession of the whole block, since the owner had a tenant on another portion of the block for the purpose of maintaining possession of the whole. Furthermore, if the act of moving the building onto the lot was for the purpose of taking possession of the whole block, it was ineffectual, since the tenant's possession of the balance of the block was not changed but continued, as before, down to the commencement of the action.

Notwithstanding the foregoing, respondent claims that appellant should not have the benefit of equity jurisdiction to remove the cloud upon its title created by the tax deed and deed based thereon to the respondent, except upon terms of paying the back taxes on the block, relying on sec. 1210, Stats. (1898). That relates to actions to set aside tax proceedings or certificates or deeds based thereon. This is not such an action. The theory of this action is that there is no tax deed; that the once tax-deed title has been extinguished by the statute of limitations; that all appellant needs the use of equity jurisdiction for, is merely to remove a cloud upon the title which is perfect in fact. Under our system the statute of limitations does not act merely on the remedy. It

extinguishes the right on one side and creates a right on the other which is of as high dignity as regards judicial remedies as any other; a right entitled to constitutional protection. *Eingartner v. Ill. S. Co.* 103 Wis. 373, 79 N. W. 433; *Pereles v. Leiser,* 119 Wis. 347, 96 N. W. 799; *State v. C. & N. W. R. Co.* 132 Wis. 345, 362, 112 N. W. 415.

This court, in the *Eingartner Case,* indorsed the rule in *Board of Education v. Blodgett,* 155 Ill. 441, 40 N. E. 1025, as a necessary result of the doctrine that the statute of limitations acts upon the right, not merely upon the remedy. It was thus stated in our own language:

"When the statute of limitations has run . . . the bar of the statute is a vested right . . . and that rule applies whether the limitation affects real or personal property, . . . ; the right to a defense, when fully vested, is as valuable as a right of action and is equally subject to constitutional protection."

When one has an absolute right, as to have his title to realty quieted and clouds thereon removed, and he has no legal, or only an inadequate legal remedy with which to conserve such right, he has a right to an equitable remedy in that regard.

The foregoing principles rule in the negative the proposition as to whether appellant should be required to pay the back taxes on the land as a condition of allowing the relief sought.

*By the Court.*—The judgment is reversed, and the cause remanded for judgment in appellant's favor according to the prayer of the complaint.