LAND & LOAN COMPANY, Appellant, vs. KESLER, Respondent.

*May 16—June 4, 1912.*

*Tax titles: Limitations: Constructive possession: Occupancy: Possession of part of known farm.*

1. In order that the constructive possession of a tax-title claimant, growing out of the recording of the tax deed, may ripen into an absolute title under the statute (sec. 1187, Stats. 1898), it is necessary that the land remain vacant and unoccupied during the entire statutory period; and the planting and harvesting of two crops upon a small clearing on a farm of 120 acres, accompanied by the annual payment of taxes by the occupant, is sufficient to arrest the running of the statute.
2. Although such acts of occupancy are confined to one forty, their effect is not necessarily limited to that forty, but where such

forty constitutes part of a known farm, as where three contiguous forties were entered as a homestead and, according to the course and custom of the country, a clearing was made on one forty and the buildings erected thereon, adverse possession of the part actually occupied will extend by construction to the remainder of the farm.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Action by tax-title claimant to bar former owner. The foundation of plaintiff's title was a certain tax deed executed by Oneida county, February 27, 1905, based on the sale of 1901. One of the issues litigated on the trial was whether or not such deed was void on its face. It reads in part as follows:

"Whereas, the *Land & Loan Company,* assignee of T. W. Hogan, and the *Land & Loan Company,* assignee of Oneida county, has deposited in the office of the county clerk of the county of Oneida, in the state of Wisconsin, eight certificates of R. M. Douglass, the county treasurer of said county, whereby it appears (as the fact is) that the following described pieces or parcels of land lying and being in the county of Oneida, to wit: [here follow descriptions of eight parcels] were for the nonpayment of taxes separately sold by R. M. Douglass, the said county treasurer of said county, at public auction, at Rhinelander, in the county of Oneida, Wisconsin, on the 21st day of May in the year of our Lord one thousand nine hundred and one to the said T. W. Hogan and Oneida county, for the sum of $44.02 in the whole; which sum was the amount of taxes assessed and due and unpaid on said (several) tracts of land, together with the costs and charges of such sale, due therewith at the time of making such sale, the whole of which sum of money has been paid by the aforesaid purchasers."

The answer averred, among other things, that the premises were a government homestead; that the defendant and her deceased mother had been in the actual and continuous possession of same from 1896 to the time this action was begun; and pleaded sec. 1187, Stats. (1898), as a bar to the action.

The court found, upon the evidence introduced by the respective parties upon the issue as to occupancy, in favor of the defendant, held the tax deed was void on its face, and entered judgment dismissing plaintiff's complaint, with costs, from which it appealed.

For the appellant there was a brief by *Smart, Van Doren & Curtis,* and oral argument by *R. N. Van Doren.*

*T. W. Hogan,* for the respondent.

VINJE, J. Plaintiff claims (1) that there is no evidence to sustain the finding of such occupancy by the defendant within three years after the recording of the tax deed as to defeat the statute of limitations from running in its favor as to any of the three forty-acre tracts; (2) that if there is such evidence, it is limited to only one forty-acre tract and cannot affect the other two; and (3) that the court erred in holding the tax deed void on its face.

It appears that in 1894 William Weenink, the father of the defendant, entered three contiguous forty-acre tracts as a homestead; that he continued to improve and occupy the land as a homestead until on or about the 16th day of November, 1896, when he died intestate, leaving his widow, Minnie Weenink, and this defendant as his only heirs at law. Thereafter the widow, by the aid of Anthony Weenink, her brother-in-law, continued to improve the homestead until she made final proof thereon some time during the year 1899. A patent duly issued to her February 25, 1901. The land was assessed for taxes during the year 1900, and plaintiff purchased the certificate, upon which the tax deed in question is based, at the tax sale of 1901. In 1907 a forest fire swept over the premises and destroyed all the buildings thereon, since which time there is no claim that they have been occupied. Upon the question of occupancy the defendant testified that she was on the premises last in 1906; that there was then a crop of timothy hay on the clearing and that it looked

good to her; that she was there in 1904 and in 1905 also; that in 1905 a crop of rye was put in; that in that year the clearing was seeded down; that in 1904 the clearing had a crop of potatoes, rutabagas, and turnips, and that after 1905 it was in rye, hay, and timothy; also that she picked berries on the land in 1905 and in 1904.

Anthony Weenink testified, in substance, that he worked the place after Mrs. Weenink proved up and got her patent; that he kept on working it in the same way after she got the patent as he did prior to that time; that he did so at her request from 1901 up to the time of her death in 1907. He said there was a house, barn, stable, shed, and hay shed on the premises; that a few of Mrs. Weenink's tools, bedding, and furniture were there. In 1905 and 1906 he cut and harvested the crops. Four or five acres were cleared of stumps and some more partly cleared. It also appears that the defendant and her predecessors in title paid taxes on the land for each year from 1901 to the time of the commencement of this action, and that none of them knew of the outstanding tax title until a short time before the action was begun. It also appears that the mother of defendant had the land surveyed and lines run out in 1906 and again in 1907, and during those years had the timber estimated on the land; and that some marsh hay was cut on the forties besides the one on which the improvements were located.

Three witnesses on behalf of plaintiff testified as to occupancy. One, Reitz, said he first saw the land in 1909; that he was sent there by plaintiff to look it over; that he saw the remains of a house and evidences of a former clearing, but in his opinion the same had not been cultivated for seven or eight years. Joe Gauthier, a fisherman living near Pelican Lake, testified that he had lived within about a quarter of a mile from this land for about six years; that so far as he knew there had been no cultivation of the clearing at any

time after the year it was proved up. It is apparent from the testimony, however, that he thought final proof was made in 1907, for he seems to be of the impression that it took place in the same year the forest fire occurred. At best, his evidence is of little value, and it is only to the effect that, so far as his knowledge goes, he thinks there was no cultivation of the clearing within the last five or six years.

Another witness, Henry Timmers, lived eight miles from the land, but during the last five or six years had been working around Gauthier's place as a guide for fishermen. He testified he had been around these premises every fall; that he had observed a small clearing on them; that he could not tell the exact extent of the clearing, but judged it to be from three to five acres; that the land showed evidence of cultivation—here and there a spot; that this was seven years ago; that he could not say whether or not Weenink had done any work on the land in the last five or seven years; that there were small patches on the clearing where one could go in and cut hay; that he could not tell whether any hay had been cut on the clearing within the last five or six years. He further states, on cross-examination, that he was unable to say whether he first saw the land in 1905 or 1906; that it was something like that; that he was unable to say whether or not any one cut hay on it in 1907; that he did not watch them; that hay was cut on the marsh; that he himself, about five years ago, cut some hay just on the corner of the land; that as to the years 1905 and 1906 he did not see any one cut hay there, and that he did not notice.

Bearing in mind the elementary rule that, if the evidence in a case is fairly sufficient to sustain a finding made by the trial court, it will not be set aside on appeal, it seems clear that the finding of occupancy by defendant of the forty upon which the improvements were located cannot be set aside. That such occupancy is sufficient to arrest the statute of lim-

itations from running in favor of the plaintiff as to that tract, is the settled law of this state. Sec. 1187, Stats. (1898); *Dreutzer v. Baker,* 60 Wis. 179, 18 N. W. 776; *Davies v. State,* 72 Wis. 54, 38 N. W. 722; *Flanders v. Washburn L. Co.* 139 Wis. 390, 121 N. W. 250; *Laffitte v. Superior,* 142 Wis. 73, 125 N. W. 105. Considering the evidence most favorable to support the finding, as we must do, it appears that the clearing was cropped each year up to the fire in 1907. The plaintiff's tax deed was dated February 27, 1905, and recorded March 25, 1905. Hence, at least two crops were removed after the issuance and recording of the tax deed. This was open and tangible occupancy adverse to plaintiff and visible to any person examining the land, and of sufficient duration to arrest the statute. For land must remain vacant and unoccupied continuously during the whole period named in the statute in order that the constructive possession of a tax-title claimant can ripen into an absolute title. *Cornell Univ. v. Mead,* 80 Wis. 387, 49 N. W. 815; *Midlothian I. M. Co. v. Belknap,* 108 Wis. 198, 84 N. W. 169; *Flanders v. Washburn L. Co.* 139 Wis. 390, 121 N. W. 250.

Assuming that the evidence of occupancy is sufficient to interrupt the statute as to the forty on which the buildings and clearing were located, yet it is urged that such occupancy cannot draw to it that of the other two forties and defeat plaintiff's title as to them, and the cases of *Coleman v. Eldred,* 44 Wis. 210; *Pepper v. O'Dowd,* 39 Wis. 538; *Smith v. Ford,* 48 Wis. 115, 2 N. W. 134, 4 N. W. 462; *Wilson v. Henry,* 40 Wis. 594; *St. Croix L. & L. Co. v. Ritchie,* 78 Wis. 492, 47 N. W. 657; and *Laffitte v. Superior,* 142 Wis. 73, 125 N. W. 105, are relied upon to sustain such claim. In none of those cases did the lands in question constitute a known farm, and the rule there announced does not apply to the case at bar. Here the three forties were entered as a homestead, were contiguous, and, according to the usual course and custom of

the country, a clearing was made on one of them and build-ings erected thereon.  The evidence is that this homestead was in substantially the same condition and used in the same manner as other homesteads in that locality, with the single exception, perhaps, that the buildings were not always occu-pied.  Taxes were paid on it by the original owners continu-ously from 1901 to the time the action was begun, and that fact, while it may not be evidence of occupation, is very per-suasive proof that there was no abandonment of the farm by the owners and is evidence tending to show that the possession by the former owners was adverse.  *Murray v. Hudson,* 65 Mich. 670, 676, 32 N. W. 889.  This court decided as early as *Pepper v. O'Dowd,* 39 Wis. 538, that when a part of a known farm "is left uncleared or uninclosed, according to the usual course and custom of the adjoining country, adverse possession of the part actually occupied may extend, by con-struction, to the part left uncleared or uninclosed according to such course and custom."  This rule has since been steadily adhered to.  *Finn v. Wis. River L. Co.* 72 Wis. 546, 40 N. W. 209; *Midlothian I. M. Co. v. Belknap,* 108 Wis. 198, 84 N. W. 169; and *Flanders v. Washburn L. Co.* 139 Wis. 390, 121 N. W. 250.  The facts in the case last cited are very sim-ilar to the facts in the case at bar and the rule there an-nounced controls the question here involved.

It is claimed the tax deed is void on its face because it shows a joint sale to T. W. Hogan and Oneida county, and that it comes within the rule of *Sprague v. Cœnen,* 30 Wis. 209.  Plaintiff contends that the rule in the *Sprague Case* does not apply, because there are several parcels of land de-scribed in the deed in the instant case, while only one parcel was described in the *Sprague Case,* and further, that the case of *Hunt v. Stinson,* 101 Wis. 556, 77 N. W. 901, takes it out of the rule announced in the *Sprague Case.*  Having reached the conclusion that the tax deed is defeated as to all the three

forties on the ground of the occupancy thereof by the original owners within the three years after the recording of the tax deed, it becomes unnecessary to determine whether or not the deed is void on its face, and we express no opinion relative thereto.

*By the Court.*—Judgment affirmed.